## Staunton.

### CITY OF CHARLOTTESVILLE V. FAILES.

#### September 22, 1904.

1. MUNICIPAL CORPORATIONS—*Sidewalks—Ice and Snow—Case at Bar.*—
   It is the duty of a municipal corporation to use due and proper
   care to see that its sidewalks are reasonably safe for persons exer-
   cising ordinary care and prudence. The slipperiness of a sidewalk,
   occasioned by ice and snow, not accumulated so as to constitute
   an obstruction, is not ordinarily such a defect as will make the
   city liable for damages occasioned thereby, and where a temporary
   slipperiness caused by sleet is the proximate cause of an injury
   complained of, there can be no recovery against the city. In the
   case at bar, the plaintiff was injured while walking rapidly over a
   sidewalk in which there was a washout or drain extending diago-
   nally across it, varying in depth from six inches on the upper side
   to a foot on the lower, and in width from eighteen inches to two
   feet. Sleet and snow had fallen the night before the injury. The
   sidewalk at the place of injury was not *per se* dangerous, but was
   in a reasonably safe condition for use by one exercising due care;
   and ice, which the city had not had the opportunity of removing,
   was the proximate cause of the injury. It was held that there
   could be no recovery.
2. JURY—*Constitution of—Irregularity Cured by Verdict.*—An objection to
   the regularity of the manner of summoning and constituting a
   jury comes too late after verdict, where it does not appear that the
   party making the objection was injured by the irregularity.

Error to a judgment of the Circuit Court of Albemarle
county, rendered in an action of trespass on the case wherein
the defendant in error was the plaintiff, and the plaintiff in error
was the defendant.

*Reversed.*

The opinion states the case.

*George Perkins,* for the plaintiff in error.

*R. S. Thomas* and *John B. Moon,* for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

On January 12, 1903, the defendant in error (who was the plaintiff in the trial court), while walking along the sidewalk of one of the streets of the city of Charlottesville, slipped and fell, breaking "the radius of his right fore-arm" near the wrist. He thereupon instituted an action against the city to recover damages for the injury, and upon the trial the jury awarded him damages to the amount of $1,250.

The controlling question for decision here arises from the ruling of the trial court in denying the motion of the city to set aside the verdict as being contrary to the law and evidence, and in rendering judgment for the plaintiff thereon.

The *gravamen* of the declaration is that the sidewalk in question was, at the time of the accident, and had been for a long time prior thereto, in an unsafe, dangerous and defective condition, with trenches, holes, and excavations therein, of which the city had notice, and which caused the injuries complained of.

It appears from the evidence that the street at the point of accident was in an out-lying, sparsely settled, and unimproved quarter of the city, and the sidewalk and road-bed unpaved; but that the city was accustomed, from time to time, to have cinders from the gas-house and railroad scattered along the sidewalk for the convenience of pedestrians in muddy weather. It further appears that there was a washout or drain, caused by water flowing from the adjoining land, which extended diagon-

ally across the sidewalk at the place where Failes was injured. Witnesses for the plaintiff estimate the dimensions of the drain at from eighteen inches to two feet in width, and from eight inches to twelve inches in depth at the gutter on the outer line of the sidewalk, and gradually diminishing in size towards its source at the inner line. The trial took place nine months after the accident, at which time the drain was ascertained, by actual measurement, to be four inches deep at the upper side of the street where Failes testified that he fell. Several witnesses expressed the opinion that the drain had filled up to some extent in the interval between the accident and trial, but the measurement made at the latter date accords, substantially, with the condition of the drain at the time the accident happened.

A witness for the plaintiff, familiar with the situation, describes the drain as follows: "At the lower end, I think it was about a foot deep; there was a gradual slope all the way up; it was a kind of gradual depression, and at the upper end it was not so deep." Again, in speaking of the depth of the drain, he says: "It was from six inches to a foot; where it empties into the gutter it is about a foot, up at the upper end it is hardly anything."

It appears from the evidence that, under normal conditions, the sidewalk where Failes was hurt, notwithstanding the washout, was not *per se* dangerous to a pedestrian exercising ordinary care; but that it was made dangerous by reason of the prevalence of a sleet, which rendered all the streets of the city slippery and unsafe. It further appears that on the day of the accident boys were skating in the streets, and that in consequence of their hazardous condition, the street commissioner issued orders that the city horses, although rough-shod, should not be taken out to work. It was also in evidence that snow had fallen over night, which filled the washout, the existence

of which was not known to the plaintiff. He attributes his fall to the combined agency of the washout and ice, but admits that he would not have fallen in the absence of the latter, if he had been observant. In answer to the question, "You fell because of the slip on the ice?" he replied, "That is what I think." It was also proved that the city had repaired the sidewalk with cinders three weeks or one month prior to the accident, and did not know of the washout at the time the accident occurred.

Viewing the case from the standpoint of a demurrer to evidence, the testimony justifies the following findings:

1st: That the sidewalk where Failes was injured was not *per se* dangerous, but was in reasonably safe condition; and

2nd: That the ice, which the city had not had an opportunity to remove, was the proximate and efficient cause of the accident.

The law applicable to the facts of the case is well settled. Judge Dillon, in his work on Municipal Corporations, states the doctrine as follows:

"The law does not require a municipal corporation to respond in damages for every injury that may be received on a public street. The corporation is not required to have its *streets or sidewalks so constructed as to secure absolute immunity* from danger in using them; nor is it bound to employ the utmost care and exertion to that end. Its duty, generally stated, is only to use due and proper care to see that its sidewalks are reasonably safe for persons exercising ordinary care and prudence. The *mere slipperiness of a sidewalk*, occasioned by ice or snow, not being accumulated so as to constitute an obstruction, is not ordinarily such a defect as will make the city liable for damages occasioned thereby. Where there is snow upon a sidewalk, and it is rendered slippery, there is danger of injury from slipping and falling, even on the best constructed walks. At such times there is imposed upon foot-travellers the neces-

sity of exercising increased care; and where the city uses reasonable diligence it will not be liable." 2 Dillon's Municipal Corporations (4th Ed.), sec. 1006.

The text is sustained by numerous authorities of the highest respectability, and must be accepted as a correct exposition of the law on the subject.

The fact that the sidewalk was in a slippery and dangerous condition was obvious, and imposed upon the plaintiff the necessity of exercising a degree of care for his own safety commensurate with the increased risk. Nevertheless, his own version of the accident shows that he was negligent in that regard, for he admits that he was walking at a rapid gait when he slipped and fell.

Among other instructions, the trial court told the jury, that if they "believed from the evidence that the sidewalk where the plaintiff fell was in a reasonably safe condition, but for the sleet, which had formed before the accident, the city was not in fault, for it had a right to await a thaw to remedy the evil, and they must find for the defendant." Tested by that statement of the law, the correctness of which is not questioned, there is no liability on the city in this case.

The second assignment of error involves the regularity of the manner of summoning and constituting the special jury which tried the case.

The exception was not taken until after verdict, and, it not appearing that the city was injured by the irregularity, the objection was properly overruled. Code, sec. 3156, as amended by Act of February 27, 1894.

The court is of opinion that the trial court erred in overruling the motion of plaintiff in error to set aside the verdict of the jury as contrary to the law and evidence, and for that error its judgment must be reversed, and the case remanded for a new trial.

*Reversed.*