# Richmond

## Irma Blair Walker v. The Memorial Hospital.

January 12, 1948.

Record No. 3264.

Present, Hudgins, C. J., and Gregory, Eggleston, Spratley, Buchanan and Staples, JJ.

The opinion states the case.

.Waldo G. *Miles* and *A. M. Aiken,* for the plaintiff in error.

*Edwin B. Meade* and *Rutledge C. Clement*, for the defendant in error.

STAPLES, J., delivered the opinion of the court.

The plaintiff in error, Mrs. Walker, sued The Memorial Hospital, a Danville charitable corporation, for damages resulting from personal injuries sustained by her when she fell down the steps of the hospital as she was leaving after a visit to her husband, who was a patient there. Her notice of motion for judgment alleges that the defendant was negligent in allowing the ice to accumulate on the apron and steps of the main hospital entrance; that she slipped on the ice and fell. The "apron" is a platform or uncovered porch leading from the top of the steps to the entrance door. The defendant filed a plea of not guilty upon which the issue was joined. The trial resulted in a verdict for the plaintiff for $9000, which the corporation court set aside as contrary to the law and the evidence, and entered final judgment for the defendant, to review which we granted this writ of error.

The parties are in agreement that the trial court correctly held that the hospital, though a charitable corporation, owed Mrs. Walker the duty to exercise ordinary care to have its premises in a reasonably safe condition, since as a visitor she occupied the legal status of an invitee. We so held in a similar case, *Hospital of St. Vincent of Paul v. Thompson*, 116 Va. 101, 81 S. E. 13, 51 L. R. A. (N. S.) 1025. On the other hand, it is not denied that it was incumbent upon the plaintiff to exercise reasonable care for her own safety. It is the appropriate application of these principles to the evidence that we are called upon to consider.

The plaintiff's position is that the defendant knew of the slippery and dangerous condition of the platform and steps; that such knowledge had been brought to its attention by the previous fall of another person who reported it to the hospital; that it was negligence on the part of the defendant

not to remedy the condition; that it was also negligence on its part not to notify or warn the plaintiff of said slippery and dangerous condition before permitting her to leave by the main entrance at nine o'clock that night, and that, as she had no knowledge or means of knowledge of said slippery condition, she was without fault on her part.

The defendant, on the other hand, asserts that snow had been falling, off and on, during the greater part of the day; that it had cleaned the snow off the steps and platform prior to Mrs. Walker's arrival about four-thirty; that the weather had turned into a freezing rain sometime before seven o'clock which continued up to the time of the accident at nine; that in the exercise of ordinary care it was not incumbent upon the defendant to undertake to remedy the icy condition, or keep plaintiff advised with respect thereto, so long as the sleet continued to fall; that the platform and steps were well lighted and were provided with handrailings on both sides, and that, on the whole case, as a matter of law it was guilty of no negligence. It also insists that the plaintiff failed to use reasonable care for her own safety; that she should have worn rubbers instead of high heel shoes when she visited the hospital, as she knew of the snow and cloudy weather at that time; that the platform and steps were adequately lighted and because of such previous knowledge of the stormy conditions she should have ascertained the true situation with respect to the outside premises before undertaking to descend the steps, and that therefore the plaintiff was guilty of negligence on her part, which was the sole cause of the accident.

The jury verdict in favor of the plaintiff entitles her to have all conflicts in the evidence and reasonable inferences therefrom resolved in her favor. We will apply this principle in the following review of the evidence.

The plaintiff's testimony was in substance as follows: She arrived at the hospital about the hour of four-thirty on the afternoon of December 13, 1945, for a visit to her sick husband and remained until the close of the visiting period at nine o'clock that night. She had made a number of

previous visits to see him and was familiar with the entrance. When she went in that afternoon there was no ice, but she noticed that the snow which had fallen had been swept to the sides of the steps and platform and that the steps were damp looking. The skies were cloudy at this time. She knew it had snowed that morning but if it had snowed in the afternoon she had no knowledge of it, but the weather was cold and it was a bad day. When Mrs. Walker's visit ended and she left the hospital about nine that night, she says she opened the door of the lobby, stepped down on the platform, walked across it and caught hold of the railing at the head of the steps on her left side. This railing extends from the wall of the building proper near the entrance door, along the sides of the platform and along the entire length of the steps on each side. When she took hold of the railing she was about sixteen inches from the snow piled along the side. The steps did not appear to be covered with a sheet of ice when she started down and she did not notice it or know the ice was there. She did not see any ice on the platform when she came out of the lobby door. The lights on the steps were burning but were not any too bright. She stepped down the first step, and, as she stepped on the second, her feet slipped out from under her and she "went all the way down to the bottom". After she had fallen and was being helped back up the steps, she noticed there was ice on them and she "judged it was from where the snow had melted and run down there and frozen". There was no falling weather at that time. No ashes or sawdust or anything of that sort had been placed on the steps. No one in the hospital or anyone else warned her of the icy condition, nor was there any warning sign or placard. She was wearing low quarter shoes at the time of the accident, with heels about an inch and a half to two inches high, and was not wearing rubbers or galoshes.

Plaintiff's witnesses, Thornton and Payne, came out of the same lobby door about the time the plaintiff fell. They corroborated her statement that there was no falling weather

then. Thornton testified that there was a solid sheeting of thin ice on the platform and on the steps; that when he first stepped on the platform he slipped but did not fall; that the light was sufficient to enable him to see all right and, after slipping, he saw the ice on the platform, and that there "was plenty ice on the steps and sidewalk too when I went out there"; that he saw the plaintiff down at the bottom "trying to get up"; that he helped her up and also helped her walk back up the steps; that he reported the accident to the lady at the night clerk's desk and she said it was the second fall that night. Payne testified that he wasn't sure whether there was ice on the platform, but that before he started down the steps he saw ice on them. Both witnesses stated they saw a girl at the hospital's night clerk desk as they went out, the desk being near the door, and she could easily see persons leaving by the main entrance; that the girl did not warn them of the slippery condition outside.

No complaint is made by the plaintiff that there was any defect in the structural condition of the platform or steps. The platform extended from the building to the steps which was seven feet three inches, while the distance between the handrailings on the sides of the platform and steps was eleven feet two inches. The steps were thirteen inches wide with a seven inch riser—that is the distance from the top surface of one step to the step above it. The platform and steps were both of granite construction. Alongside the bottom step was a granite slab or base on either side, on each of which rested an iron standard or pole extending upward higher than the level of the platform. On the top of both standards was a translucent globe, in each of which were three forty-watt bulbs. A photograph introduced in evidence shows the lights to be similar to those commonly used along the sides of city streets. These were lighted at the time of plaintiff's fall.

With respect to the weather conditions on the day and night of the accident, the evidence establishes without contradiction that it snowed sometime during the morning; that it snowed a little around two o'clock in the after-

noon, and was also snowing at three o'clock and at five o'clock. The steps were wet but not frozen at six o'clock in the afternoon, and there was no falling weather at that time. Between six and seven o'clock a fine freezing rain began falling and at ten or fifteen minutes to seven it was slippery from previous sleeting. The records of the United States Weather Bureau on file at Richmond showed the temperature, sky condition, and ground cover, at the Danville Airport at certain time intervals. It was agreed the airport is between three and five miles from the hospital. According to these records, at seven thirty p. m. on the day of the accident the temperature was twenty-seven degrees, a light freezing rain was falling, and there was light smoke. At eight-seventeen and eight-thirty there was a light freezing rain and a light fog, with temperature unchanged. At nine-thirty, ten-thirty and eleven-thirty, the conditions were unchanged except that the temperature was one degree higher.

The evidence clearly shows that, although there was no falling weather when the plaintiff came out of the hospital, there was a fairly continuous condition of freezing rain or sleet from before seven o'clock until eleven-thirty p. m., and that the conditions on the city sidewalks, and on the platform and steps of the hospital, were slippery, and that this was known to the hospital authorities. The evidence shows that one person had previously slipped and fallen on the ice but did not seem to be hurt.

The first question raised by the petition and briefs is whether or not the evidence is sufficient to support the finding of the jury that the defendant was negligent with respect to its duty to exercise ordinary care to have the premises in a reasonably safe condition.

The plaintiff does not complain that there were any holes or irregularities in the floor of the platform or steps, or any other structural defects or inadequacies of any kind. The notice of motion does not allege any failure to provide adequate lighting facilities, and the undisputed evidence shows the platform and steps were reasonably well lighted

on the occasion of the accident. The plaintiff was on her way to catch a bus home. This required her to walk over the sidewalks of the city after leaving the hospital. These sidewalks were in the same slippery condition as the platform and steps of the hospital and the City of Danville was under no legal duty to remedy same until after the storm had ended.

In the case of *Charlottesville* v. *Failes*, 103 Va. 53, 56-57, 48 S. E. 511, an opinion by Judge Whittle contains the following with respect to the duty of a city to remedy slippery conditions of sidewalks due to ice or snow:

"The law applicable to the facts of the case is well settled. Judge Dillon, in his work on Municipal Corporations, states the doctrine as follows:

" 'The law does not require a municipal corporation to respond in damages for every injury that may be received on a public street. The corporation is not required to have its *streets or sidewalks so constructed as to secure absolute immunity* from danger in using them; nor is it bound to employ the utmost care and exertion to that end. Its duty, generally stated, is only to use due and proper care to see that its sidewalks are reasonably safe for persons exercising ordinary care and prudence. The *mere slipperiness of a sidewalk*, occasioned by ice or snow, not being accumulated so as to constitute an obstruction, is not ordinarily such a defect as will make the city liable for damages occasioned thereby. Where there is snow upon a sidewalk, and it is rendered slippery, there is danger of injury from slipping and falling, even on the best constructed walks. At such times there is imposed upon foot-travellers the necessity of exercising increased care; and where the city uses reasonable diligence it will not be liable.' 2 Dillon's Municipal Corporations (4th Ed.), sec. 1006.

"The text is sustained by numerous authorities of the highest respectability, and must be accepted as a correct exposition of the law on the subject."

The opinion also approved an instruction to the effect that, if the accident in that case was due solely to the sleet

and not to any defect in the sidewalk itself, "the city was not in fault, for it had a right to await a thaw to remedy the evil".

If the defendant hospital had been able to remove, and had completely removed, all ice from its platform and steps, the effect of this would merely have been to reduce the distance the plaintiff, Mrs. Walker, would have had to walk on a like slippery surface by less than twenty feet, because in order to take her bus she would have been confronted with the icy sidewalks after leaving the steps. It would seem that the hazard of the platform and steps was no greater that that of the streets. In fact, it was probably less hazardous because the handrails along the side of the platform and steps afforded a support against slipping. The lighting facilities there were also perhaps better than at some portions of the sidewalks she would walk over to catch the bus. Furthermore, the evidence indicates that the platform and steps, while slippery, were not abnormally so for sleeting weather. Thornton and Payne did not fall in going to Mrs. Walker's help after her mishap, and they did not consider the conditions too risky for them to assist her up the steps and along the platform to the hospital lobby in order to report the accident; nor did any of the three apparently experience any difficulty in this return journey.

This accident occurred on that part of the defendant's premises which was not under roof, but was completely exposed to the elements. It happened while the storm, which alone caused the hazardous condition, was in progress.

The authorities are in substantial accord in support of the rule that a business establishment, landlord, carrier, or other inviter, in the absence of unusual circumstances, is permitted to await the end of the storm and a reasonable time thereafter to remove ice and snow from an outdoor entrance walk, platform, or steps. The general controlling principle is that changing conditions due to the pending storm render it inexpedient and impracticable to take earlier effective action, and that ordinary care does not require it.

*Pessagno* v. *Euclid Inv. Co.*, 112 F. (2d) 577, is the only

case we have been able to find to the contrary. It arose in the District of Columbia where the plaintiff was injured by falling on ice while it was still raining and freezing. This occurred in the private driveway of defendant's apartment house in Washington City while plaintiff was walking a short distance to reach a taxicab she was about to take. The district court had set aside a verdict for the plaintiff and entered final judgment for the defendant, basing its conclusion primarily on the principles established by the New York decisions that ordinary care did not impose upon the landlord the duty to remove or render harmless rain while it was falling and freezing. (25 F. Supp. 896). The Court of Appeals of the District of Columbia, however, disapproved these authorities and reversed the district court. Four cases are cited in the opinion of the appellate court in support of the proposition that landlord is obligated "to use reasonable care, during the progress of a storm, to remove or render harmless ice forming thereon from natural causes". In all of the cases cited, however, the slippery conditions were due to causes which existed a considerable time before the storm began. In two of them, *Reardon* v. *Shimelman*, 102 Conn. 383, 128 A. 705, 39 A. L. R. 287, and *Massor* v. *Yates*, 137 Or. 569, 3 P. (2d) 784, there was evidence indicating the previous existence of the slippery and dangerous condition. It "had been there for several days" in the first named case, and twelve days in the second. Nor did it appear that a storm was in progress in either case. In the other two cases cited in said opinion, *Robinson* v. *Belmont-Buckingham Holding Co.*, 94 Colo. 534, 31 P. (2d) 918, and *United Shoe Mach. Corp.* v. *Paine*, 26 F. (2d) 594, 58 A. L. R. 1398, the act of negligence involved was failure to previously remove slippery ice which had existed long before the snow began to fall, but which, being concealed by the snow, caused the injury. In other words the cases cited, instead of supporting the conclusion reached by the Court of Appeals that ordinary care required removal or correction of the slippery condition while the storm was in progress, followed the principles recognized

in the cases hereinafter discussed, to the effect that the property owner is allowed a reasonable time after the storm has ended before being required to take such action.

*Palmer* v. *Pennsylvania Co.* (1888), 111 N. Y. 488, 18 N. E. 859, 2 L. R. A. 252, involved the railroad's liability for injury to a passenger who slipped on a small amount of ice which had accumulated on the platform of a passenger car attached to a through train. The particular question presented was the degree of care required of the carrier. The trial court had instructed the jury that it owed the duty to use the utmost possible care. After disapproving this, which the appellate court said pertained primarily "to the construction and maintenance of tracks and running machinery by railroad corporations", the opinion of the New York Court of Appeals continued:

"The rule laid down by the trial court in *Weston* v. *Railroad Co.*, as approved in 73 N. Y. 595, in reference to a permanent platform at an elevated railroad station in the city of New York, was that 'the defendant was not bound to keep its platform in such a condition that it would have been impossible for any passenger to slip, but in such a condition that a person using ordinary care, which people use when not apprised of danger, would not slip.' This was applied in a case where the snow had fallen long before the accident and an effort had been made by the railroad company to remove it, but it had imperfectly performed that duty. We think even such a rule is not applicable to the removal of snow and ice on cars attached to a running railroad train traveling in the night during a continuous storm. The immediate and continuous removal of all snow and ice from such trains, or the covering of them with sand or ashes in such manner that no slippery places shall be at any time exposed, would be quite impracticable and beyond the duty which a railroad company owes to its passengers. The presence of snow or ice upon exposed places on moving cars is an accident of the hour, and no ordinary diligence could, during the prevalence of a storm, wholly remove its effects from the places exposed to its

action, so as to prevent accidents to heedless and inattentive travelers. A passenger on a railroad train has no right to assume that the effects of a continuous storm of snow, sleet, rain, or hail will be immediately and effectually removed from the exposed platform of the car while making its passage between stations or the *termini* of its route, and it would be an obligation beyond a reasonable expectation of performance to require a railroad corporation to do so. We are not referred to any case laying down the precise degree of care and diligence required of such corporations, under such circumstances; but we think it must be somewhat analogous to that imposed upon municipal corporations in respect to the removal of snow and ice from public streets. Those corporations are required to remove dangerous accumulations of snow or ice in a street or public place within a reasonable time after they have occurred, but they are not to be deemed negligent if they do not remove all traces of such obstructions when they do not constitute something more than the presence of a danger arising alone from their inherent quality of being slippery. * * *." (18 N. E. 859, 860-861).

In *Kelly* v. *Manhattan Ry. Co.*, 112 N. Y. 443, 20 N. E. 383, 3 L. R. A. 74, a year later, the court held that the same reduced standard of care (ordinary care) was applicable to the stairway of an elevated railroad in New York City leading from the station to the street. There was a roof over the stairway but the sides were not enclosed and a mixture of snow and hail had blown in upon the steps causing the plaintiff to slip and fall. The court held, as a matter of law, that the defendant's failure to remedy the slippery condition *within two hours after the cessation of the storm* did not constitute a want of reasonable care. In reversing a judgment in favor of the plaintiff the opinion said:

"In applying this rule of reduced liability to the case in hand, we are unable to see from the evidence on the part of the plaintiff that the defendant was guilty of such negligence as would permit the recovery of a judgment for the injury sustained by the deceased. The night was cold

and stormy. Snow fell, mixed with sleet, and the side-walks were rendered very slippery. This the deceased knew, for he walked upon them from the saloon to the Thirty-fourth Street station. The storm commenced about midnight, and continued until nearly 4 o'clock in the morning, and this accident happened between half past 5 and 6 o'clock. The defendant had furnished a covered stairway, with handrails, and pieces of rubber on each step to prevent slipping; and the failure to throw ashes or sawdust or something of that character, upon the steps during the storm cannot be regarded as negligence, because the continuance of the storm would soon render the steps as slippery as before; and it seems to us that culpable negligence cannot be predicated upon the failure to clean off the steps between the time the storm ceased, which was between 3 and 4 o'clock in the morning. and the time when the accident happened. So brief a period as that, at such a time in the night, cannot, we think, be regarded as any evidence of a lack of that reasonable care which the defendant was bound to exercise." (20 N. E. 383, 386).

In *Rusk* v. *Manhattan Ry. Co.*, 46 App. Div. 100, 61 N. Y. S. 384, the plaintiff slipped and fell as she stepped down on the Rector Street landing of the elevated railway. The landing was covered with ice. It was still snowing and in the absence of evidence as to the length of time the ice had been there the court said the only inference that could be drawn from the testimony was "that the presence of the ice and snow was due to the storm which was then progressing". It said further, "The defendant, under all of the authorities, had a reasonable time after the snow fell and the ice formed to remove it. . *Kelly* v. *Manhattan Ry. Co.*, 112 N. Y. 443, 20 N. E. 383, 3 L. R. A. 74. It was not liable because it did not sprinkle 'sand, ashes or sawdust' upon the ice and snow". The court concluded there was not sufficient evidence to support the jury's finding of negligence on the part of the company.

In *Meginn* v. *Ramsdell*, 163 App. Div. 232, 148 N. Y. S.

415, the defendant was the operator of a ferry. The court disposed of the plaintiff's action in these words:

"Plaintiff's complaint is based upon an allegation that defendants negligently permitted their walks and approaches to the ferry house to become smooth and icy, and not upon any defective construction thereof. In addition, plaintiff's own testimony is to the effect that the walk was icy at the spot where she fell, and this was twice repeated. It appears without dispute that snow and sleet had fallen on the morning in question, and it had only ceased storming about an hour before the accident. The rule applicable to defendants is the use of reasonable care in the maintenance of the approaches to its ferry house." (citing cases) "No negligence could be predicated upon failure to remove snow or ice within an hour after it had fallen."

*Bordonaro* v. *Bank of Blasdell*, 259 App. Div. 32, 18 N. Y. S. (2d) 422, involved the slippery condition of an entrance to a bank. The plaintiff, a customer, slipped and fell on snow which had accumulated on a ledge leading for a distance of five feet from the snow-covered sidewalk *to the entrance of the bank*. The accident occurred at eleven-thirty in the morning. There had been a heavy snow fall the previous night, and snow was still falling at the time of the accident. The plaintiff testified the surface on which she slipped was slippery, rough, and lumpy. The court held that the evidence was not sufficient to support the verdict of the jury that the bank had not used ordinary care to keep its private walkway in a safe condition.

In *Gianpaola* v. *Paoli*, 129 N. Y. S. 180, a landlord and tenant case, the evidence showed that a stoop, which the landlord owed his tenants the duty to use reasonable care to keep in safe condition, was slippery and icy. The testimony of one witness was, "I saw *fresh* ice on the steps of the stoop", and on the previous day "it was covered with ice", and "the *ice began to fall two days before that*". "*As the snow was falling the ice was freezing.*" Another testified, "There was ice on the step, and there was also ice on the sidewalk", and about two hours before the accident

"it was full of ice"; and also that the ground was covered with ice. The opinion of the court said with respect to the above evidence:

"In view of the fact that it appears from the official weather reports that for two days previous to the accident the weather had been inclement, that sleet and rain fell and froze on the ground, and that the streets were covered with ice, I fail to see how the testimony that two days before. the accident and at the time of the accident the stoop was covered with ice is any evidence of negligence.

"Where the proof fails to show a condition due to the landlord's negligence or which could have been remedied by reasonable care on his part, the plaintiff should not be permitted to recover.

"It is well established that the mere fact that the steps were covered with ice is insufficient to hold the landlord, unless the ice was permitted to accumulate there through his negligence, and in this record I find no proof of such a fact." (129 N. Y. S. 180, 181).

In another landlord and tenant case, *Bressler* v. *Rule Realty Co.*, 219 App. Div. 529, 220 N. Y. S. 461, the plaintiff sustained personal injuries when she slipped and fell on icy entrance steps of the building in which she was residing. The plaintiff did not notice the ice, though it was raining and freezing at the time. The judgment of the trial court rendered on the verdict of the jury in favor of the plaintiff was reversed by the appellate division in the following *per curiam* opinion:

"The accident occurred while rain was still falling with freezing temperature. The defendant was not negligent, therefore, in failing to remove the ice or to throw ashes or sawdust thereon (*Kelly* v. *Manhattan Ry. Co.*, 112 N. Y. 443, 20 N. E. 383, 3 L. R. A. 74)."

The foregoing was affirmed in a memorandum opinion of the New York Court of Appeals, 248 N. Y. 619, 162 N. E. 548.

The plaintiff's brief discusses a number of cases to sustain its position that the evidence is sufficient to justify submit-

ting to the jury the question whether the defendant was guilty of negligence in not removing or rendering harmless the icy film which covered the hospital platform and steps. None of them, however, is authority for the proposition that ordinary care requires the defendant to take such action during the progress of the storm. The one nearest approaching this is *Great Atlantic, etc., Tea Co.* v. *Chapman*, 72 F. (2d) 112. There a recent light snow had fallen on some previously accumulated ice in the entrance walkway to the store, concealing it from the customer *who slipped on the hidden ice and fell*. The court held the store's negligence was a jury question because the evidence was such as to justify a finding that the ice had existed long enough beforehand to put the store on notice that it lay under the snow which concealed it. The negligent act involved was the failure to remedy the previous dangerous condition, not the hazard resulting from the mere falling of the snow.[1]

The plaintiff also relies upon *Ross* v. *Mayflower Drug Stores*, 324 Pa. 513, 188 A. 346. In this case the single step leading up to the entrance door of the store was in an icy condition, known to its manager. The condition had existed during the afternoon, but he had neither removed it nor adopted any other measures to protect his customers. No very recent snow fall was indicated. The condition of the lights was bad and it was questionable whether plaintiff would have seen the dark colored ice unless her scrutiny had been very close. It was held that the question of the store's negligence was one for the jury, as was also that of plaintiff's contributory negligence. It appears that the defendant had ample time to remedy the dangerous condition after the snow had ended.

*Picariello* v. *Linares, etc., Bank*, 127 N. J. L. 63, 21 A. (2d) 343, also cited by plaintiff, was a case where snow

---

[1] A like conclusion was reached on similar facts in the following cases: *United Shoe Mach. Corp.* v. *Paine*, 26 F. (2d) 594, 598, 58 A. L. R. 1398; *Robinson* v. *Belmont-Buckingham Holding Co.*, 94 Colo. 534, 31 P. (2d) 918, 920; *Hurlburt* v. *Sherman*, 116 Conn. 102, 163 A. 603, 605.

and water had been tracked by customers into the defendant's banking room, which made the floor very slippery. This condition had existed for an hour and a half before plaintiff, a customer, slipped and fell. It was held that the question of defendant's negligence was properly submitted to the jury; that the jury might have found the defendant either knew or should have known of the dangerous condition and should have provided a covering for the floor or otherwise remedied the situation.

In a similar indoor case relied on by the plaintiff, *Great Atlantic, etc., Tea Co.* v. *McLravy*, 71 F. (2d) 396, it was held to be a jury question whether the store was guilty of negligence in permitting snow and ice to accumulate in its vestibule entrance. There was evidence that the snow was being constantly tracked inside by customers coming in from the sidewalk. The snow had been swept out at six o'clock a. m., and at noon, but not later than that. The plaintiff slipped and fell about four o'clock in the afternoon. A witness had observed ice in the vestibule at two o'clock. This case, as well as the previous one, related solely to conditions inside the building not created by the falling weather itself but by human agency.

However, the authorities are not in accord even on the question of liability for indoor injuries due to water, mud or snow being tracked on the floor by customers of a mercantile or other business establishment during or closely following a storm. Cases denying liability under such circumstances are cited below.[2]

Plaintiff cites a number of cases in which the question of negligence with respect to the unsafe condition of premises due to causes other than falling weather was held to be within the province of the jury. In *Acme Markets* v. *Remschel*, 181 Va. 171, 24 S. E. (2d) 430, the plaintiff stumbled over the stump of a post left in a parking lot provided for the use of customers of the market. There

[2] *Parsons* v. *Green Co.*, 233 Iowa 648, 10 N. W. (2d) 40; *S. S. Kresge Co.* v. *Fader*, 116 Ohio St. 718, 158 N. E. 174, 58 A. L. R. 132; *Bersch* v. *Holton St. State Bank*, 247 Wis. 261, 19 N. W. (2d) 175; *Antenen* v. *New York Tel. Co.*, 271 N. Y. 558, 2 N. E. (2d) 693.

was a conflict of evidence as to the adequacy of the lights, the accident having occurred at night. Whether the owner of the premises, in not removing the obstruction, had exercised the required care toward his invitee was held to be a question for the jury. Sometime previously a former customer had reported that he had damaged his car on it. A like conclusion was reached in *Knight* v. *Moore*, 179 Va. 139, 18 S. E. (2d) 266, which involved the question whether a guy wire which the operator of a lake for swimming had anchored on the bank of the lake created a dangerous condition at a place where his patrons were invited or had a right to go. The case of *Eastern Shore of Va. Agricultural Ass'n* v. *LeCato*, 151 Va. 614, 144 S. E. 713, did not challenge the negligence of the association in providing a broken or defective seat for the use of its visitors. The only question was whether the dangerous condition of the seat was open and obvious, and we held this was properly submitted to the jury. But these cases do not seem to us to have any substantial relation to the precise question here under consideration.

The plaintiff's brief discusses other cases, involving either affirmative acts of the operator of the premises, which were relied on, or some inherently defective condition in the building or place itself. We do not think these cases are pertinent here because, in the view we take of the case, the question whether the hospital was under a duty to the plaintiff to remove the sleet or take any other corrective action with respect to same until a reasonable time had elapsed after the freezing rain had ceased to fall lies within a distinctly different category of negligence. The hazardous condition which resulted in plaintiff's unfortunate injury was caused solely by the usual and natural action of the elements. It rendered slippery, not only the defendant's premises, but also all other exposed places within the city. Every pedestrian who ventures out at such times knows he is risking the chance of a fall and of a possible serious injury. It is a hazard to which nature subjects all alike, him who undertakes to remove or correct it as well

as the one for whose protection the risk of removal or correction is incurred. It would be an unreasonable rule which would impose upon an inviter the necessity of repeated excursions into the storm, with the attendant risks of exposure and injury to himself, in order to relieve the invitee of all risk from this natural hazard. Such a burden would place the inviter practically in the role of an insurer of the safety of the invitee. Since the law imposed on the hospital the duty of exercising only ordinary care for Mrs. Walker's safety, we do not think that the evidence in the record supports the finding of the jury that the defendant failed to discharge its duty in this respect.

The trial court gave consideration to the question whether the defendant was negligent in failing to warn the plaintiff beforehand of the slippery condition of the platform and steps. The notice of motion did not allege failure to warn as an act of negligence. However, the defendant did not object to its consideration because of its omission from the notice. If the point had been made, the plaintiff probably would have been allowed to amend so as to include it.

The evidence shows that when the plaintiff entered the hospital about four-thirty in the afternoon she had knowledge of the following facts: It had been snowing and the snow had been swept to the sides of the platform and steps; the steps were damp looking; it was cloudy and was a bad day. It appears that she remained in the hospital until about nine o'clock. For more than two hours before her departure the sleet or freezing rain had been falling. Mrs. Walker did not testify that she did not know of the sleet, though she did say that no one had told her or warned her of the slippery condition of the platform or steps. She was familiar with them, however, and knew that they were exposed to the weather. The hospital authorities were not charged with knowledge that she had not been outdoors since the sleet began, nor is there any evidence that they had any reason to believe that she did not know of the sleet, for it had then been falling more than two hours. Under these circumstances we think it was not incumbent upon the hos-

pital to warn her of a condition, the existence of which was due to action of the elements, and which ordinary care did not require the defendant to remedy. Since the storm had not finally terminated, the exercise of reasonable care no more required defendant to warn of the result of the weather than it did to remedy the result.

Since the evidence shows no primary negligence on the part of the defendant, consideration of the question of plaintiff's alleged contributory negligence is unnecessary.

The judgment of the corporation court is accordingly

*Affirmed.*