## Richmond

ERISMAN C. TATE

V.

VIRGINIA W. RICE, ET AL.

Record No. 811821.

April 27, 1984.

Present: All the Justices.

*Francis C. Terwilliger (Terwilliger & Woodhouse,* on brief), for appellant.

*G. P. Young (Campbell, Young & Hodges,* on brief), for appellee.

RUSSELL, J., delivered the opinion of the Court.

In this slip-and-fall case, we must determine whether the owner or occupier of a private residence owes a duty to remove natural accumulations of ice and snow from an entrance driveway, for the protection of an invitee.

Erisman C. Tate, a poultry farmer, made regular deliveries of fresh eggs to the home of Raymond and Virginia Rice, in the Town of Pulaski. It is stipulated that Tate was a business invitee at the Rice home at the time in question.

Tate missed a scheduled delivery around January 31, 1980, because of a heavy snowfall. Mrs. Rice called him and asked that he bring her a delivery on the next appointed day, February 7. Although there was an additional snowfall on February 6, Tate made his scheduled deliveries in Pulaski on February 7, stopping at approximately forty homes en route without incident.

At about 1:00 p.m. on February 7, Tate arrived at the Rice home, driving a four-wheel-drive vehicle. The house is located on a "fairly steep" hill and is elevated above the public road. It is connected to the road only by a private driveway approximately 127 feet long. There is no sidewalk or separate walkway leading from the road to the house.

The entire area was covered by about four inches of snow. There were several sets of footprints in the driveway, but no tire tracks were visible. Tate drove part way up the driveway, but stopped when he saw another car was parked at the top. His truck then skidded backward down the driveway some fifteen feet.

Tate, wearing rubber-soled boots, alighted from his truck and walked up the driveway to the house, carrying his delivery of eggs. Two young boys going down the driveway passed him. One of them slipped and fell. After making his delivery, Tate turned to begin his descent. He testified that he scuffed one foot in the snow as he came onto the incline, to test the footing. Finding his traction good at that point, he started down the grade, but came to an area where it felt "slick as glass." He fell, fracturing his wrist, and slid nearly all the way down to the truck.

Mrs. Rice was absent, visiting at the home of an ailing sister. Mr. Rice was at home, but in poor health at the time. He died the

following month, and this action was brought against his executors. Mrs. Rice testified that she and her husband had routinely declined the services of the various youngsters who came to the house to seek employment shoveling snow. She said it was their practice to let snow and ice melt away naturally.

The court instructed the jury, over the defendants' objection:

Instruction No. 9

An occupant of premises has a duty to an invitee to use ordinary care to remove ice or snow from outdoor entrance ways within a reasonable time after he knows, or by the use of ordinary care should know, that it is there and that it creates an unsafe condition.

If an occupant fails to perform this duty, then he is negligent.

Over the plaintiff's objection, the court also instructed the jury as to the defenses of contributory negligence and assumption of the risk. The jury returned a verdict for the plaintiff in the amount of $10,000.00.

The defendants moved the court to set aside the verdict on the ground that Instruction No. 9 was erroneous, that they had no duty to remove snow and ice from the driveway, and that there was no evidence of any facts that would reasonably cause them to expect that the plaintiff would not see and realize the danger, and take reasonable steps to protect himself. In a memorandum opinion, the court concluded that the owner or occupier of a private residence owes no duty to an invitee to remove natural accumulations of snow and ice from the premises, and that the danger presented by the accumulation was such that an invitee might reasonably be expected to discover it and protect himself. The court granted the motion, set aside the verdict, and entered summary judgment for the defendants. Tate appeals.

The defenses of contributory negligence and assumption of the risk depended upon factual issues which properly were submitted to the jury and resolved in Tate's favor. We are here concerned solely with the question whether there was evidence of primary negligence on the Rices' part. Its resolution requires an examination of the duties owed by occupants of land to visitors in varying circumstances.

An owner or occupier of land is liable to a social guest or to a licensee only for injuries caused by active or affirmative negligence, or by wilful or wanton conduct. *Bradshaw* v. *Minter,* 206 Va. 450, 143 S.E.2d 827 (1965). But such an owner or occupier must use ordinary care to keep his premises reasonably safe for an invitee, although he is not an insurer of the invitee's safety. An invitee has a right to assume that the premises are reasonably safe for his lawful use, in the absence of information to the contrary. While the owner must give notice or warning of an unsafe condition which is known to him and unknown to the invitee, such notice is not required where the dangerous condition is open and obvious, and is patent to a reasonable person exercising ordinary care for his own safety. *Culpepper* v. *Neff,* 204 Va. 800, 804-05, 134 S.E.2d 315, 318-19 (1964); *Gall* v. *Tea Company,* 202 Va. 835, 837, 120 S.E.2d 378, 380 (1961); *Gottlieb* v. *Andrus,* 200 Va. 114, 117, 104 S.E.2d 743, 746 (1958); *Knight* v. *Moore,* 179 Va. 139, 145-46, 18 S.E.2d 266, 269 (1942). "A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he . . . (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it . . . ." Restatement (Second) of Torts § 343 (1965).

> [I]n the usual case, there is no obligation to protect the invitee against dangers which are known to him, or which are so obvious and apparent to him that he may reasonably be expected to discover them. Against such conditions it may normally be expected that the visitor will protect himself.

W. Prosser, Handbook of the Law of Torts § 61 (4th ed. 1971).

> The knowledge of the condition removes the sting of unreasonableness from any danger that lies in it, and obviousness may be relied on to supply knowledge. Hence the obvious character of the condition is incompatible with negligence in maintaining it. If the plaintiff happens to be hurt by the condition, he is barred from recovery by lack of defendants' negligence toward him, no matter how careful plaintiff himself may have been.

2 Harper & James, Law of Torts § 27.13, at 1491 (1956). Thus, the obviousness of the danger serves to eliminate any duty on the landowner's part to warn of or to remove the danger.

■ In the case before us, the snow-covered condition of the driveway and the steepness of the incline were as obvious to Tate as they were to the owners. There was no evidence of any latent or hidden condition, known to the owners but not apparent to an invitee. Thus, under the familiar tort principles discussed above, the evidence fell short of demonstrating primary negligence on the Rices' part.

■ Tate, however, points to *Walker* v. *The Memorial Hospital,* 187 Va. 5, 45 S.E.2d 898 (1948); *Apartments, Inc.* v. *Bisson,* 207 Va. 474, 150 S.E.2d 540 (1966); and *Cannon* v. *Clarke,* 209 Va. 708, 167 S.E.2d 352 (1969), as authority for the view that an owner or occupant of land, in the reasonable discharge of his duty to exercise ordinary care for the safety of an invitee, must remove natural accumulations of snow and ice from exposed walkways, steps, and porches within a reasonable time after the end of a storm. In *Walker,* a visitor to a hospital patient fell on the icy steps of the hospital while leaving the building. Freezing rain was still falling at the time of the accident, and this fact precluded a finding of primary negligence against the hospital. We said, "a business establishment, landlord, carrier, or other inviter, in the absence of unusual circumstances, is permitted to await the end of the storm and a reasonable time thereafter to remove ice and snow from an outdoor entrance walk, platform, or steps." 187 Va. at 13, 45 S.E.2d at 902. In *Bisson,* a tenant in an apartment development fell on a snow-covered common walkway more than twelve hours after the snowstorm ended. We held that a landlord ordinarily has a duty "to use reasonable care to remove natural accumulations of snow and ice from walkways reserved for the common use of his tenants within a reasonable time after the storm ceases." This duty is based upon an implied contract between landlord and tenant, and may be abrogated by express contract, by statute, or by ordinance. 207 Va. at 478, 150 S.E.2d at 542.

In *Charlottesville* v. *Failes,* 103 Va. 53, 48 S.E. 511 (1904), we applied the foregoing principles to municipal corporations. In *Wynne* v. *Spainhour,* 215 Va. 16, 205 S.E.2d 634 (1974), and most recently in *Kings Markets* v. *Yeatts,* 226 Va. 174, 307 S.E.2d 249 (1983), we applied them to commercial establish-

ments. We, however, have never extended the foregoing rule to the owner or occupant of a private residence, nor have we indicated that such a householder fell within the scope of the "other inviter[s]" mentioned in *Walker*.[1]

■ Tate points out that distinctions between the duties owed to visitors traditionally depend upon the visitors' status, as, *e.g.,* trespassers, licensees, or invitees.[2] The duties should not depend, he argues, upon the uses to which the land is put, *e.g.,* commercial establishments, public streets, apartment developments, and private homes. We cannot agree. There are sound reasons for basing such distinctions upon the character of the land as well as upon the status of the visitor. The economic incentives to attract the general public, which affect the proprietors of commercial establishments and common carriers, the public duties which affect municipal corporations, and the contractual relationships which affect landlords, are lacking in the usual circumstances of a private home.[3] On the other hand, a householder may lack the physical and economic means for the efficient removal of snow and ice. It is more reasonable to expect such efforts from those who put their land to a more intensive use and encourage heavy traffic in visitors.

Further, a distinction based in part upon the use of the land holds no pitfalls for the visitor. He will, in ordinary circumstances, have little difficulty in determining whether he is entering upon a heavily-traveled public area, where diligent efforts to remove snow may reasonably be expected, or the grounds of a private residence,

---

[1] In *Cannon* v. *Clarke,* 209 Va. 708, 167 S.E.2d 352 (1969), a plaintiff sued homeowners for injuries received in a fall from their porch. The evidence showed that snow had previously fallen, but had been swept from the walkway and porch before the plaintiff's visit. We reserved a judgment for the plaintiff due to a lack of proof of any negligence on the defendants' part. Although we discussed the rules pertaining to commercial establishments, we did not reach the question whether, if snow had been shown to be present on the porch when the plaintiff fell, defendants would have been under any duty to remove it.

[2] *See generally* Annot., 32 A.L.R.3d 508 (1970). Some authorities contend that these distinctions based on status are outmoded survivals of the feudal system, which should now be supplanted by a single duty of "reasonable care in all the circumstances." *See, e.g., Kermarec* v. *Compagnie Generale Transatlantique,* 358 U.S. 625 (1959); *Rowland* v. *Christian,* 69 Cal.2d 108, 443 P.2d 561 (1968). We, however, are unwilling to discard the well-understood structure which has long regulated the duties owed by landowners to their visitors.

[3] "[T]he house of every one is to him as his castle and fortress . . . ." *Semayne's Case* 5 Co. Re. 91a at 92; 77 ER 194 at 195 (Sir Edward Coke, 1604).

where they are less likely. He may reasonably be expected to govern himself accordingly, for his own safety.

Although the authorities in other jurisdictions are not unanimous, the better-reasoned cases do not impose upon a householder the duty to remove obvious and natural accumulations of snow and ice as a part of his obligation to keep his premises reasonably safe for an invitee. *See Gillen* v. *Martini,* 31 Mich. App. 685, 188 N.W.2d 43 (1971); *Johnson* v. *Murphy,* 417 S.W.2d 527 (Mo. Ct. App. 1967); *Everett* v. *Wallbrun,* 273 S.W.2d 751 (Mo. Ct. App. 1954); *Schmidt* v. *Carper,* 270 App. Div. 411, 61 N.Y.S.2d 185 (1946), *aff'd,* 296 N.Y. 791, 71 N:E.2d 471 (1947); *Sidle* v. *Humphrey,* 13 Ohio St. 2d 45, 233 N.E.2d 589 (1968); *McClendon* v. *McCall,* 489 P.2d 756 (Okla. 1971).

We agree with the reasoning of these cases, and decline to extend to a householder the duty imposed upon commercial establishments, carriers, municipalities, and landlords to remove natural accumulations of snow and ice within a reasonable time after the end of a storm. We hold that the duty of the owner or occupier of a private residence to maintain his premises in a condition which is reasonably safe for an invitee does not extend to warning of, or removing, a danger that is open and obvious.

For the foregoing reasons, Instruction No. 9 submitted the question of the defendants' negligence to the jury on an erroneous theory which justified the court's subsequent ruling setting aside the verdict. Since the evidence demonstrated no actionable primary negligence on the Rices' part, the court correctly entered summary judgment in the defendants' favor. The judgment will, accordingly, be

*Affirmed.*