## CIRCUIT COURT OF THE CITY OF NORFOLK

Daniell E. Gambrell

v.

City of Norfolk

November 8, 2002

Case No. (Law) CL02-279

BY JUDGE CHARLES D. GRIFFITH, JR.

On February 8, 2002, Plaintiff Daniell E. Gambrell filed a Motion for Judgment, in which she moved for judgment against Defendant City of Norfolk. In her Motion, Plaintiff alleges that Defendant, as owner and/or operator of Parking Lot Number 39 (Lot # 39), breached its duties to maintain the lot, keep it free from ice and snow, and warn the public of any latent defects. Pl's Mot. for J., ¶¶ 1-2. As a result of this breach, Plaintiff alleges that she slipped and fell in Lot # 39, sustaining extensive injuries. *Id.* at ¶¶ 5-7. Plaintiff requested $1,000,000.00 for her medical expenses, loss of earning capacity, and pain and suffering. *Id.* at ¶¶ 7, 9.

The relevant facts, as alleged in Plaintiff's Motion for Judgment, are as follows. Plaintiff's employer, Bank of America (the Bank), leased parking spots from Defendant in Lot # 39, located at the corner of Monticello Avenue and Princess Anne Road in the City of Norfolk. *Id.* at ¶¶ 1-3. Defendant

owned and operated the lot. Plaintiff regularly parked there to get to her job. *Id.* at ¶ 2.

In late January 2000, there was a snowstorm in Norfolk. *Id.* at ¶ 3. On January 27, 2000, Plaintiff was warned not to use Lot # 39 because it had not been cleared of ice and snow. *Id.* The next day, Plaintiff was told that the lot was "fit for use" and that she should park there. *Id.* at ¶ 4. However, the lot had not been fully cleared; snow and ice remained. *Id.* at ¶¶ 4-5. There were no warnings and no markings designating the places that had not been cleared. *Id.* at ¶ 5. While walking from her car to the shuttle-bus stop, Plaintiff slipped and fell, suffering serious injury. *Id.* at ¶¶ 6-7.

On March 12, 2002, Defendant filed a Demurrer and a Special Plea of Governmental Immunity (Special Plea). Defendant's Demurrer alleges that Plaintiff has failed to state a cause of action for which relief may be granted. Def.'s Dem., at ¶¶ 1-3. Plaintiff's injuries, by her own admission, were a result of the snow and ice, not any defect in the surface of Lot # 39. *Id.* at ¶ 2. Defendant states that it had no duty to remove snow and ice from Lot # 39. *Id.* at ¶ 3. In Defendant's Special Plea, Defendant states that Plaintiff's allegations of negligence arise from "emergency snow and ice removal activities necessitated by a severe snowstorm." Def.'s Special Plea, at ¶ 2. Emergency snow and ice removal are governmental functions. *Id.* at ¶ 1. Defendant is immune from tort liability for the performance of such functions. *Id.* at ¶ 3.

On August 19, 2002, Defendant filed a Brief in Support of City's Demurrer and Special Plea (Defendant's Brief in Support). On or about September 13, 2002, the Court held a hearing on Defendant's Special Plea. On September 24, 2002, Plaintiff filed a Memorandum in Opposition to the Defendant's Demurrer and Special Plea of Sovereign Immunity (Plaintiff's Memorandum in Opposition). On or about October 1, 2002, Defendant filed a Rebuttal Brief in Support of Special Plea and Demurrer (Defendant's Rebuttal Brief).

This Opinion shall address the Defendant's Demurrer to Plaintiff's Motion for Judgment and Defendant's Special Plea of Governmental Immunity.

*Defendant's Demurrer to Plaintiff's Motion for Judgment*

A demurrer tests the sufficiency of factual allegations to determine whether the motion for judgment states a cause of action. *Fun v. Virginia Military Inst.*, 245 Va. 249, 252, 427 S.E.2d 181, 183 (1993). A demurrer "admits the truth of all material facts that are properly pleaded, facts which are impliedly alleged, and facts which may be fairly and justly inferred from the

alleged facts." *Delk v. Columbia/HCA Healthcare Corp.*, 259 Va. 125, 129, 523 S.E.2d 826, 829 (2000) (quoting *Cox Cable Hampton Rds., Inc. v. City of Norfolk*, 242 Va. 394, 397, 410 S.E.2d 652, 653 (1991)). Additionally, on demurrer, the trial court may consider the substantive allegations of the pleading in addition to any accompanying exhibit mentioned in the pleading. *Flippo v. F & L Land Co.*, 241 Va. 15, 16, 400 S.E.2d 156, 156 (1991) (citing Va. Sup. Ct. R. 1:4(i) (2001)). The Court may consider the pleading and the exhibits and take as true "all fair inferences deducible therefrom." *Palumbo v. Bennett*, 242 Va. 248, 249, 409 S.E.2d 152, 152 (1991). However, "a demurrer does not admit the correctness of the pleader's conclusions of law." *Fox v. Custis*, 236 Va. 69, 71, 372 S.E.2d 373, 374 (1988) (citations omitted). Moreover, "a court considering a demurrer may ignore a party's factual allegations contradicted by the terms of authentic, unambiguous documents that are properly a part of the pleadings." *Ward's Equip. v. New Holland N. Am., Inc.*, 254 Va. 379, 382, 493 S.E.2d 516, 518 (1997).

In her Motion for Judgment, Plaintiff alleges that Defendant was the owner and operator of Lot # 39. Pl.'s Mot. for J., at ¶ 1. Her employer, the Bank, leased 900 parking spaces in the lot for the exclusive use of its employees. Pl.'s Mem. in Opp'n, at 1; Pl.'s Ex. 1, at ¶ A.[1] For the parking spaces, The Bank paid Defendant $375,000.00 a year. Pl.'s Mem. in Opp'n, at 1; Pl.'s Ex. 1, at ¶ B. Defendant provided the Bank with hanging decals for employees' cars to identify those "allowed to use the area set aside." Pl.'s Ex. 1, at ¶ C. The terms of the contract allowed the Bank to "assign a parking attendant/security person to th[e] lot to ensure that the designated area for the use of its employees is properly utilized." *Id.* at ¶ F. Finally, Plaintiff alleges that she parked in the section set aside for Bank employees and was walking in that section when she slipped and fell. Pl.'s Mem. in Opp'n, at 1, 3-4.

From these facts, Plaintiff argues that the section of Lot # 39 rented by the Bank was not a public area. *Id.* at 3-5. Instead, Plaintiff argues that Defendant was in the same position as a commercial landlord offering private parking spaces. Furthermore, Plaintiff claims that she was Defendant's invitee and therefore Defendant owed her a duty to keep the lot clear or warn her of the danger. *Id.* In considering Defendant's Demurrer, this Court must accept Plaintiff's factual allegations as true. However, this Court does not have to accept Plaintiff's conclusions about the legal relationship between her and the Defendant.

Regardless of whether Lot # 39 was a public area or the Defendant was acting as an ordinary landlord, Plaintiff may not recover for her injuries. In

---

[1] The contract refers to "NationsBank" rather than Bank of America.

Virginia, both commercial and municipal property owners have a similar duty of care in this situation. *Tate v. Rice*, 227 Va. 341, 346-47, 315 S.E.2d 385, 388-89 (1984) (illustrating the difference between the duty of municipal and commercial property owners and the duty of private property owners).

An owner is under a duty to "use ordinary care to make his premises reasonably safe for an invitee, although he is not an insurer of the invitee's safety." *Id.* at 345, 315 S.E.2d at 388. However, "[t]he authorities are in substantial accord in support of the rule that a business establishment, landlord, carrier, or other inviter, in the absence of unusual circumstances is permitted to await the end of the storm and a reasonable time thereafter to remove ice and snow." *Walker v. Memorial Hosp.*, 187 Va. 5, 13, 45 S.E.2d 898, 902 (1948) (holding that the city hospital was not liable for plaintiff's injuries as a result of her slip on the icy entrance steps). The same rule has been applied to municipal owners. *Tate*, 227 Va. at 346-47, 315 S.E.2d at 389; *cf. City of Charlottesville v. Failes*, 103 Va. 53, 56, 48 S.E. 511, 512 (1904) ("[T]he city was not at fault, for it had the right to await a thaw to remedy the evil.").

In the case at bar, Defendant did not wait an unreasonable period to remove the snow and ice from Lot # 39. On January 25, 2000, Norfolk experienced a heavy snowfall, 4.7 inches. Pl.'s Mem. in Opp'n, at 2; Def.'s Ex. 2. On January 26 and 27, 2000, four inches of snow remained on the ground and the temperatures stayed well below freezing. Def.'s Ex. 2. On January 28, 2000, the date of the incident, the high temperature was thirty-three degrees Fahrenheit. *Id.* Under these conditions, without any change for natural thawing or melting, it was not unreasonable that Defendant had yet to clear Lot # 39. Therefore, Plaintiff has not shown that Defendant failed to exercise ordinary care in keeping the premises safe for its invitees.

Moreover, "there is no obligation to protect the invitee against dangers which are known to him or which are so obvious and apparent to him that he may reasonably be expected to discover them." *Tate*, 227 Va. at 345, 315 S.E.2d at 388 (quoting W. Prosser, *Handbook of the Law of Torts* § 61 (4th ed. 1971)). "While the owner must give notice or warning of an unsafe condition which is known to him and unknown to the invitee, such notice is not required where the dangerous condition is open and obvious." *Id.* (citations omitted). Plaintiff saw that the lot was covered with snow and ice.[2] Pl.'s Mem. in Opp'n, at 3. She should have known that it was slippery.

---

[2] "When plaintiff arrived at the parking lot ... she noticed that the streets and the parking lot entrance had been cleared, however, the actual parking lot surface was still coated with snow and ice." Pl.'s Mem. in Opp'n, at 3.

Defendant had no duty to protect her from the obvious dangers of falling under those conditions.

For the above-stated reasons, the Court sustains Defendant's Demurrer to Plaintiff's Motion for Judgment.

### Defendant's Special Plea of Governmental Immunity

Under Virginia law, a city "is immune from liability for negligence in its exercise of, or failure to exercise, a governmental function." *Woods v. Town of Marion*, 245 Va. 44, 45, 425 S.E.2d 487, 488 (1993) (citing *Bialk v. City of Hampton*, 242 Va. 56, 58, 405 S.E.2d 619, 620 (1991)). A city will be liable for any negligence in the performance of its proprietary functions, including street maintenance. *Woods*, 245 Va. at 45-46, 425 S.E.2d at 488-89; *Bialk*, 242 Va. at 58, 405 S.E.2d at 620. However, clearing the streets after unusual weather conditions, severe snowstorms, or hurricanes, is considered a governmental function. *Woods*, 245 Va. at 46, 425 S.E.2d at 489 (citing *Bialk*, 242 Va. at 59, 405 S.E.2d at 621, and *Fenon v. City of Norfolk*, 203 Va. 551, 556, 125 S.E.2d 808, 812 (1962)). "[W]hen governmental and proprietary functions coincide, 'the governmental function is the overriding factor'." *Bialk*, 242 Va. at 58, 405 S.E.2d at 620-21 (quoting *Taylor v. City of Newport News*, 214 Va. 9, 10, 197 S.E.2d 209, 210 (1973)).

In the instant case, Defendant has asserted governmental immunity as a complete defense to Plaintiff's suit. Def.'s Special Plea, at ¶ 3. "As with other defenses, the party raising the defense has the burden to establish it." *Lee v. Nationwide Mut. Ins. Co.*, 255 Va. 279, 283, 497 S.E.2d 328, 329 (1998). In ruling on this plea, the Court must accept as true the non-moving party's allegations. *Woods*, 245 Va. at 45, 425 S.E.2d at 488.

Plaintiff argues that Defendant's failure to clear the ice and snow from Lot # 39 constituted negligence in a proprietary, rather than governmental, function. Pl.'s Mem. in Opp'n, at 5-7. In support of this argument, Plaintiff alleges: (1) that the weather emergency had passed, as evidenced by the fact that the road crews were no longer working around the clock; and (2) maintenance of Lot # 39 was a proprietary function because it was not for the public good. *Id.* at 6-7. Whether snow clearing in this instance was a proprietary or governmental function is a legal conclusion, and this Court is not required to accept Plaintiff's characterization as true.

Severe snowstorms are a rarity in coastal Virginia. As a consequence, Defendant has limited manpower and equipment for snow removal. There are obvious human limitations preventing road crews from working around the clock for an extended period. Merely that the crews had reduced their hours by

the third day after the storm, does not mean that an emergency situation no longer existed. On January 28, 2000, there were still three inches of snow on the ground and the high temperature was just barely above freezing. Def.'s Ex. 2. The remaining snow and ice still "required immediate governmental action to restore vital services to the public." *Woods*, 245 Va. at 46, 425 S.E.2d at 489. Defendant's continued effort to dig out from the storm was a governmental function and subject to governmental immunity.

Furthermore, despite Plaintiff's argument, the maintenance of Lot # 39 was a governmental function. The test for whether an act is governmental or proprietary function turns on whether "in providing such services, the governmental entity is exercising the powers and duties of government conferred by law for the general benefit and well-being of its citizens. ... [E]ven if fees were charged, the governmental aspect of the undertaking is controlling." *Edwards v. City of Portsmouth*, 237 Va. 167, 172, 375 S.E.2d 747, 750 (1989) (citing *Transp., Inc. v. City of Falls Church*, 219 Va. 1004, 1006, 254 S.E.2d 62, 64 (1979); *Taylor*, 214 Va. at 10, 197 S.E.2d at 210 (1973)). The provision of off-street parking is a governmental function specifically authorized by the Code of Virginia. Va. Code Ann. § 15.2-1122 (2002); *Stanpark Realty Corp. v. City of Norfolk*, 199 Va. 716, 719, 101 S.E.2d 527, 531 (1958) (decided under the old statute). Although Defendant did receive a financial benefit from leasing spaces to the Bank,[3] there was a clear public benefit received. Pl.'s Mem. in Opp'n, at 7. Without Lot # 39, the 900 cars the Bank anticipated its employees using would be parked along the already congested streets of downtown Norfolk. The benefits of off-street parking for Plaintiff and her colleagues are not limited to the Bank and its employees, but are enjoyed by the members of the general public who live, work, and drive in the downtown area. For these reasons, the maintenance of Lot # 39 was a governmental function subject to governmental immunity.

For the above-stated reasons, the Court sustains Defendant's Special Plea of Governmental Immunity. It is so ordered.

---

[3] The statute also authorizes the municipality to charge a fee for parking. Va. Code Ann. § 15.2-1122.