### Richmond

## MARY WASHINGTON HOSPITAL, INC.

### V.

## CURTIS FRANKLIN GIBSON

Record No. 811897.

September 7, 1984.

Present: All the Justices.

*Harry Leigh Thompson (Thompson, Savage and Smithers,* on briefs), for appellant.

*W. W. Whitlock* for appellee.

COMPTON, J., delivered the opinion of the Court.

In this slip-and-fall case, we limited the appeal to consideration of claims that the trial court erroneously admitted certain evidence and incorrectly instructed the jury.

On January 13, 1979, about 10:00 a.m., appellee Curtis Franklin Gibson, age 44, was injured when he fell in Fredericksburg on an outdoor sidewalk on the grounds of appellant Mary Washington Hospital, Inc. In January of 1980, Gibson filed this damage suit against the hospital, charging that the hospital negligently permitted ice to accumulate on its walkways and negligently failed to warn of the presence of ice on the sidewalk in question. In a June 1981 trial, the plaintiff obtained a verdict for $100,000 upon which the trial court entered judgment in August of 1981.

First, we address the question whether the trial court correctly admitted evidence offered by the plaintiff about the results of an experiment conducted at the scene of the accident 23 months after it occurred. The evidence consisted of testimony by a landscape architect, photographs taken during the test, and a surveyor's topographic sketch of the sidewalk.

The plaintiff fell while walking along the sidewalk as he approached a hospital entrance from a parking lot to visit a friend. The plaintiff's theory was that while walking in "slush" caused by a winter storm, he slipped on a layer of ice hidden beneath the slush. The plaintiff sought to prove that the ice had accumulated at the place where he fell because water had collected and frozen on the sidewalk immediately adjacent to a surface water drain located in the hospital driveway. The water, and eventually ice, had formed, the plaintiff contended, because the sidewalk sloped slightly downhill to the point of the fall and because the sidewalk

block, or section, on which he fell was tilted at an angle toward the drain. This caused the water to gather on the corner of the sidewalk block adjacent to the curb separating the sidewalk from the driveway.

During December of 1980, almost two years after the accident, Ronald D. Wilson, a landscape architect, visited the scene with plaintiff's attorney. Wilson had agreed to view the site to determine its "physical conditions . . . particularly the drainage pattern of the sidewalk area in question." Evidence showed, however, that during the period between the date of the accident and the time of Wilson's visit, there had been changes in the area due to a construction program at the hospital. The work began in November of 1979. During the course of this work, the block of sidewalk on which the plaintiff fell had been removed in March of 1980 and replaced with a new concrete section. The curb adjacent to the drain had been cut to allow a pipe to run beneath the sidewalk to the drain. In addition, heavy construction vehicles had been travelling across the sidewalk in connection with the new work. Also, during the same period, large tractor-trailer trucks, fully loaded, had been driven across the sidewalk en route to a hospital loading dock that had been relocated due to the construction.

On the day of the experiment, the landscape architect and the attorney carried a ten-gallon container of water to the scene, "and at various points on the sidewalk poured this water to observe its course of flow down the sidewalk to the low point." At the time, photographs of the walkway and the poured water were taken in the presence of the architect. Subsequently, the architect arranged for a surveyor to examine the scene. The surveyor made a drawing of the sidewalk sections indicating the "elevations at the corner of each joint and crack and crevice" by minute measurements of one hundredths of a foot.

Based upon the photographs and the drawing, as well as personal observations at the site, the architect testified that water flowed down the sidewalk to the point where the plaintiff fell. Wilson opined that surface water collected on the block adjacent to the drain and, because of misalignment of the sidewalk sections and the height of the curbing, the water would not flow into the drain inlet but stood on the walkway itself. In his appellate brief, the plaintiff says that the experiment "was conducted to show that water flows to the area of the new block . . . and to show that the

adjacent blocks had a defect representative of the defect in the replaced block [on which the plaintiff slipped and fell]."

We agree with the hospital's contention that the trial court committed reversible error by admitting evidence related to the experiment. "The results of experiments are not admissible in evidence unless the tests were made under conditions which were the same or substantially similar in essential particulars to those existing at the time of the accident." *Featherall* v. *Firestone Tire and Rubber Co.,* 219 Va. 949, 959, 252 S.E.2d 358, 365 (1979). *See Habers* v. *Madigan,* 213 Va. 485, 487, 193 S.E.2d 653, 655 (1973).

Here, the plaintiff's evidence failed to demonstrate that the conditions at the site had not changed materially between the time of the accident and the date of the experiment. The evidence was uncontradicted that the very section of concrete on which the plaintiff slipped had been destroyed and that the curbing in the area had been cut to permit access to the drain of a storm-sewer line. Heavy vehicles repeatedly had been driven back and forth across the sidewalk. The architect admitted that he did not know the nature or quantity of equipment that had traversed the sidewalk, when the travel had occurred, the weight of the vehicles, or the weight of the loads. He testified, however, that he observed at the site piles of top soil, parked construction vehicles, and disturbed earth. He acknowledged that he did not know what "forces" had changed the sidewalk following the accident and before the experiment. In sum, there was insufficient proof that there had not been minute, but significant, changes in elevation of the various sidewalk blocks that may have altered the "drainage pattern" of the sidewalk area during the critical period. As we noted in *Thorpe* v. *Commonwealth,* 223 Va. 609, 614, 292 S.E.2d 323, 326 (1982), "there are too many missing variables" to permit the expert to give his opinion about water-flow patterns and the extent of defects, if any, in the sidewalk. Consequently, we hold the trial court abused its discretion by admitting the architect's testimony about the test, the photographs of the scene taken at the time of the experiment, and the surveyor's drawing.

Because the case will be remanded, we will address other issues on appeal that may arise during a new trial. We do not agree with the hospital's contention that the trial court erred in permitting the expert Wilson to estimate the age of the concrete sidewalk sections. This was an opinion based entirely upon per-

sonal examination of the concrete and its inherent qualities. We do agree, however, with the hospital's argument that the court should not have permitted the expert to opine whether the sidewalk blocks "settled" before or after the accident. This testimony is flawed in a manner similar to that relating to the experiment. Because of the likelihood that the conditions affecting the stability of the concrete blocks had changed materially following the accident and before the expert's examination of the scene, such testimony was too speculative to be probative.

Finally, we will address claimed errors in the instructions. There was a conflict in the evidence about the condition of the weather at the scene when the plaintiff fell. His evidence showed that, while snow had fallen and some ice formed in the general area the night preceding the accident, there was no snow, sleet, or rain falling during the morning of the day in question. Testimony for the plaintiff showed there was "only slush" on the streets and sidewalks that morning and that no "hard ice" was visible on the walkways. On the other hand, the hospital's evidence showed that on the morning of the accident the weather was "pretty horrible." There was testimony that ice had collected "on the cars, trees, road, grass, everything . . ." and that a winter storm was in progress.

The trial court gave the following instructions:

### "INSTRUCTION 11

"The Court instructs the jury that—

"An occupant of premises has a duty to an invitee to use ordinary care to remove ice or snow from outdoor entrance walks within a reasonable time after he knows, or by the use of ordinary care should know, that it is there and that it creates an unsafe condition.

"If an occupant fails to perform this duty, then he is negligent."

### "INSTRUCTION 12

"A landowner is permitted to await the end of a storm and a reasonable time thereafter to remove ice and snow from outdoor areas, and during such time the fact of ice or snow accumulating or existing on the premises is not negligence on the landowner's part."

The hospital contends the trial court erred by giving Instruction 11, which is based upon Instruction No. 23.110, I *Model Jury Instructions in Virginia-Civil* (1983). The hospital argues that the instruction conflicts with Instruction 12, and that it is repugnant to the rule of *Walker* v. *Memorial Hospital,* 187 Va. 5, 45 S.E.2d 898 (1948), which was correctly embodied in Instruction 12.

We agree with the hospital that Instruction 11 conflicts with Instruction 12, that the two instructions are confusing when read together, and that the statement in Instruction 11 is contrary to the rule of *Walker* and its progeny. The duty to remove ice and snow from outdoor areas, set forth in Instruction 12, is keyed to the end of the storm and a reasonable time thereafter. But in Instruction 11, the same duty is based on the acquisition of knowledge that the ice and snow has created an unsafe condition, without regard to the time when the storm ends. Under the circumstances of this case, in which there is a dispute whether the storm had ceased or was ongoing on the morning of this accident, any instruction delineating the hospital's duty to remove ice and snow should have been premised, in order to avoid confusion, on a preliminary finding by the jury that would resolve the conflict about the weather conditions.

This is because in discharging the duty owed to an invitee, as here, the hospital, a commercial establishment, was permitted to await the end of the storm and a reasonable time thereafter to remove ice and snow from an outdoor entrance walk, in the absence of special circumstances. *Id.* at 13, 45 S.E.2d at 907; *accord Langhorne Road Apartments, Inc.* v. *Bisson,* 207 Va. 474, 476-77, 150 S.E.2d 540, 542 (1966); *see Wynne* v. *Spainhour,* 215 Va. 16, 17, 205 S.E.2d 634, 635 (1974); *cf. Tate* v. *Rice,* 227 Va. 341, 315 S.E.2d 385, 390 (1984) (reaffirming the *Walker* rule but refusing to extend it to householders). If, however, a reasonable time had passed after the end of the storm, as the plaintiff's evidence showed in this case, it became the duty of the hospital to use reasonable care to remove natural accumulations of snow and ice from hospital walkways used by its invitees. *Langhorne Road Apartments, Inc.* v. *Bisson,* 207 Va. at 478, 150 S.E.2d at 541-42; *see Kings Markets, Inc.* v. *Yeatts,* 226 Va. 174, 179-80, 307 S.E.2d 249, 253 (1983). Consequently, Instruction 11 should not have been given.

Lastly, the hospital contends the trial court erred by granting Instruction 15, dealing with the hospital's duty to repair and

warn of defects to its sidewalks, and Instruction 19, relating to the plaintiff's right to assume that the sidewalks were in a reasonably safe condition. It is sufficient to point out that these instructions more appropriately set forth the duties owed by municipal corporations to members of the public in the maintenance of public ways. Indeed, the form of the instructions tracks the language of Instructions 32.040 and 32.020 found in II *Model Jury Instructions in Virginia-Civil* (1983), Chapter 32, titled "Municipal Corporations-Streets and Sidewalks." Upon retrial, the hospital's duties, if any, to repair and to warn, as well as the plaintiff's right, if any, to assume, should be embodied in instructions in a form that is more appropriate to the owner-invitee context, if such issues have been raised properly by the pleadings and the proof.

For these reasons, the judgment below will be reversed and the case remanded for a new trial upon all issues.

*Reversed and remanded.*