# SILAS REX RUNYON

## V.

# NORMA GELDNER

Record No. 860590

March 3, 1989

Present: Compton, Stephenson, Russell, Thomas, Whiting, and Lacy, JJ.,
and Poff, Senior Justice

*Edward H. Grove, III (Brault, Palmer, Grove & Zimmerman,* on brief), for appellants.
*Michael J. Miller (Jacobi & Miller,* on brief), for appellee.

POFF, Senior Justice, delivered the opinion of the Court.

In this appeal from a plaintiff's judgment in a slip-and-fall case, the dispositive question is whether the plaintiff-invitee's evidence was sufficient to prove that the defendant homeowners were guilty of actionable negligence. An underlying issue is whether the testimony of an expert was competent evidence.

Norma Geldner filed a motion for judgment against Silas Rex Runyon and Addie J. Runyon, his wife, claiming damages for personal injuries sustained in a fall on the Runyons' driveway. The plaintiff alleged that the defendants had failed "to maintain the premises in a reasonably safe condition" and "to warn business invitees of any . . . latent defects known to them." With the consent of the parties, the trial court tried the case without a jury. The court entered a judgment awarding the plaintiff damages in the amount of $39,500, and we granted the defendants an appeal.

Deciding to sell the home they had occupied for 22 years, the Runyons contacted Mrs. Norma Geldner, a real estate agent. On her first visit, Mrs. Geldner parked her car beside the house in "a level spot at the top" of the driveway. Mrs. Geldner suggested several repairs and improvements designed to make the property more marketable. The Runyons agreed to comply with her suggestions, and the parties fixed a date to execute a listing agreement.

Mrs. Geldner arrived at the Runyons' home at 10:30 a.m. on June 1, 1984, a dry, sunny day. On this visit, she parked at the sidewalk "approximately three feet from the driveway." As she got out of her car, she exchanged greetings with Mr. Runyon. Mrs. Geldner testified that "he was squatting down" in the driveway beside the house and "[w]orking with paint brushes or paint." Asked if she had seen him "thereafter, till after [her] fall", she replied, "No." "I knew he was up there," she said, "but I didn't speak to him. I didn't carry on a conversation as I was

approaching." When asked if Mr. Runyon had seen her "start up the driveway", Mrs. Geldner first said "I believe so, yes." In response to a question on cross-examination, she agreed that Mr. Runyon was "looking down at the paint brushes" and that he was "[n]ot necessarily" looking at her.

Mr. Runyon testified that he spoke to Mrs. Geldner when she arrived. "Didn't it occur to you," he was asked, "that she was going to walk up that driveway and speak to you?" "It never occurred to me," he replied. "I just thought, as a business person, she would come to the front door, you know? So, I was getting ready to go inside; clean up, go inside and meet her."

The Runyons' home sat on a knoll above the street level in the Virginia Hills subdivision. Sixteen steps and a handrail were required to reach the front door from the sidewalk. Running parallel to the stairs at a distance of 10 to 15 feet was a driveway paved in asphalt. Mrs. Geldner decided to use the driveway as the most direct approach to Mr. Runyon. Mrs. Geldner, a resident of the subdivision, characterized the situs of the Runyons' home as similar to that of "the majority of the Virginia Hills houses [which] have steep driveways, up hills. That's why it's named Virginia Hills".

Mrs. Geldner was wearing shoes with heels one to two inches high, and she acknowledged that her ankles were swollen that morning. She had taken five steps up the driveway without incident when suddenly she felt that she could not "get a good foothold." On the sixth step, she turned and started back to the sidewalk. On the first step down, she felt her foot slide. On the third step, she slipped, fell on her back, and sustained serious injuries.

Several weeks before the accident, Mr. Runyon had applied a rubberized sealant to the surface of the driveway. He testified that, because "the driveway was sloping", he decided to follow the manufacturer's directions on the five-gallon container. Obtaining a larger can, he added two "good sized shovel fulls" of sand to the sealant, "stirred it up", and applied the mixture with a "squeegee brush".

Mrs. Geldner's real estate agency completed the sale of the home, and the Runyons moved away in September 1984. In August 1985, Mrs. Geldner's attorney and Gregory Harrison inspected the Runyons' driveway. At trial, the plaintiff introduced Harrison as a witness experienced "in the field of civil engineering and in composition application of driveway resurfacing". Harrison

testified that he also was qualified as a "slip and fall expert in the jurisdictions of Maryland, Virginia, and Washington, D.C." Over the defendant's objection, the court "accepted" him as an expert witness.

Illustrating his testimony with an exhibit containing samples of a driveway sealant he had applied to a board, Harrison testified that the addition of sand to the sealant was necessary to increase traction on a sloping driveway. In his opinion, sand had never been mixed with the sealant applied to the Runyons' driveway. Specifically, he said that when he inspected the pavement, he "didn't observe sand had been utilized in this particular driveway. That was based on a superficial exam." He found "evidence of a heavy film of tar which is part of the seal coat". He concluded that the driveway "had been seal coated quite frequently" and that this would "build up a thick film . . . that would be a very slippery surface".

On cross-examination, Harrison conceded that he had not talked with the owners who had occupied the property since the Runyons left in September 1984, and he acknowledged that the new owners could have applied additional coats of sealant to the driveway before he inspected it in August 1985. The defendants objected to the expert's testimony on the ground that the plaintiff had failed to lay a proper foundation. The trial court overruled the objection, and the defendants assign error to that ruling.

■ "The results of experiments are not admissible in evidence unless the tests were made under conditions which were the same or substantially similar in essential particulars to those existing at the time of the accident." *Featherall* v. *Firestone*, 219 Va. 949, 959, 252 S.E.2d 358, 365 (1979) (citations omitted). The plaintiff dismisses the long line of cases applying that rule on the ground that "Mr. Harrison's observations and opinions did not amount to nor can they be construed as tests and/or experiments."

■ But we have recently applied that rule in a case in which the trial court had permitted an expert witness "to opine whether the sidewalk blocks 'settled' before or after the accident." *Mary Washington Hosp.* v. *Gibson*, 228 Va. 95, 100, 319 S.E.2d 741, 743 (1984). There, we held that "[b]ecause of the likelihood that the conditions affecting the stability of the concrete blocks had changed materially following the accident and before the expert's examination of the scene, such testimony was too speculative to be probative." *Id.* at 100, 319 S.E.2d at 744. That holding reaffirms

the principle inherent in earlier decisions where we held that, absent proof of a similarity of conditions and circumstances, the opinion testimony of an expert concerning the speed and stopping distances of railway cars was inadmissible for lack of a foundation. *Wise Ter. Co. v. McCormick*, 104 Va. 400, 408-9, 51 S.E. 731, 734 (1905); *Richmond Passenger, & Co. v. Racks*, 101 Va. 487, 490-91, 44 S.E. 709, 711 (1903).

Based upon his examination of the surface of the pavement, Harrison opined that sand had never been mixed in the sealant applied to the Runyons' driveway. But at the time of his visit, new owners had been occupying the premises and using the driveway for nearly a year. Harrison acknowledged that the driveway surfacing may have changed materially following the accident and before his examination of the scene. Significantly, plaintiff called no witness to deny that such a change had occurred.

Instead, the plaintiff's counsel merely showed Harrison a picture taken in September 1984 and asked him "if the driveway appeared to be in that condition on the day that you inspected it?" Harrison replied in the affirmative, and the trial court overruled the defendant's objection on the ground that "his testimony is that the photograph which he looked at . . . was an accurate representation of the condition of the driveway that he looked at on August 8, 1985." As appears from the following dialogue, however, Harrison qualified his initial reply:

Q. You can't tell from these photographs whether anything had been done since June, 1984, up until the time you looked at the property, can you?

A. No.

Q. They're not close enough for what you want to look for, is that right?

A. Right.

■ Because the plaintiff failed to show that the condition of the surface of the driveway at the time of Harrison's inspection was the same or substantially similar to the condition existing at the time Mrs. Geldner fell, we hold that the plaintiff failed to lay a proper foundation for this expert's testimony and, consequently, that the trial court erred in overruling the defendant's objection.

Absent Harrison's opinion, the record contains no evidence to contradict Mr. Runyon's testimony that, following the recommen-

dations of the manufacturer of the product, he had added sand to the sealant to change its texture and increase the traction of the surface of the pavement. Nor do we find evidence of any other act or omission to support the plaintiff's allegation that the defendants failed "to maintain the premises in a reasonably safe condition". On the contrary, the evidence shows that the Runyons provided a staircase with a handrail leading directly to their front door so that visiting pedestrians would not have to climb the steep driveway designed for motorists.

Alternatively, Mrs. Geldner alleged that the Runyons were guilty of negligence for failing "to warn business invitees of any . . . latent defects known to them." Again, the only proof of a *latent* defect was the inadmissible opinion of an expert. So far as the competent evidence shows, whatever hazard the driveway posed to pedestrians was *patent*. Access from the street level to the situs of the house was so steep as to require sixteen stair steps; the driveway ascended the same elevation.

■ Homeowners are not obligated to warn invitees of a hazard "where the dangerous condition is open and obvious, and is patent to a reasonable person exercising ordinary care for his own safety." *Tate* v. *Rice*, 227 Va. 341, 345, 315 S.E.2d 385, 388 (1984) (citations omitted). The obvious character of the condition relieves homeowners of any duty they otherwise might owe. As some commentators have said, an invitee injured by such a condition "is barred from recovery by lack of defendant's negligence toward him, no matter how careful plaintiff himself may have been." 5 Harper, James & Gay, The Law of Torts § 27.13, at 244 (2d Ed. 1986).

■ Because we hold that the evidence was insufficient to prove that the Runyons were guilty of primary negligence, we need not consider the defendants' contention that the plaintiff was guilty of contributory negligence as a matter of law. We will reverse the judgment below and enter final judgment here for the Runyons.

*Reversed and final judgment.*