COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Baker and Bray
Argued at Norfolk, Virginia


RIVERSIDE REGIONAL MEDICAL CENTER/
 RIVERSIDE HEALTH SYSTEM AND
 HEALTHCARE PROVIDERS GROUP
 SELF-INSURANCE ASSOCIATION
                              MEMORANDUM OPINION[*] BY v.
     Record No. 2439-97-1    CHIEF JUDGE JOHANNA L. FITZPATRICK
                                   MARCH 24, 1998
DOROTHY JEAN TYREE


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          Linda M. Ziegler (Crews & Hancock, PLC, on
          briefs), for appellants.

          Paul H. Wilson (Wilson & Wilson, P.C., on
          brief), for appellee.


     Riverside Regional Medical Center/Riverside Health System

and Healthcare Providers Group Self-Insurance Association

("employer") appeal a decision of the Workers' Compensation

Commission awarding benefits to Dorothy Jean Tyree ("claimant").

 Employer contends that the commission erred in:  (1) finding

that claimant sustained an injury by accident arising out of her

employment on May 23, 1996; (2) refusing to allow Leo Cantor, an

expert witness, to testify regarding certain information related

to the condition of the doorway threshold where claimant tripped;

and (3) finding that claimant proved she sustained an injury to

her right knee caused by the May 23, 1996 tripping incident.

───────────────

     [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

Finding no error, we affirm.

On appeal, we view the evidence in the light most favorable to the prevailing party below.  See R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990).

The May 23, 1996 Incident

Claimant worked for employer as a phlebotomist.  On May 23, 1996, during the course of her employment at approximately 3:15 p.m., claimant walked out of a doorway leading from the carpeted office of Smith Kline onto the linoleum floor in the hallway.  As she did so, she caught her tennis shoe on a metal strip in the doorway, which separated the carpeted area from the linoleum floor, causing her to trip and twist her right knee.  She did not fall to the floor because she was able to catch herself using a handle on the wall.  She felt immediate pain in her knee and could not put full pressure on the knee after she tripped.  There were no witnesses to the tripping incident.  Claimant immediately reported the injury to her supervisor.

Based upon photographs of the metal strip taken by claimant on May 24, 1996, she testified that the strip looked the same the next day, except that it looked as if it had been hammered down in the area that had been "sticking up" the day before.  Claimant came to this assumption based upon the appearance of dent marks on the metal strip near the area where she tripped.

Leo J. Cantor, a professional engineer, testified on behalf of employer as an expert witness.  On August 27, 1996, Cantor

examined and photographed the metal strip.  Cantor measured the lip of the metal strip, finding 5/16 of an inch differential between the linoleum floor in the hallway and the carpeted floor in Smith Kline.  Cantor stated that the height differential from inside the Smith Kline lab into the hallway, claimant's path during the tripping incident, was so negligible that he could not measure it without a micrometer.

Marilyn Scott, a phlebotomist employed by Smith Kline on May 23, 1996, saw claimant come into the Smith Kline lab at approximately 3:15 p.m., retrieve a paper from the fax machine, and exit the lab.  Scott stated that claimant did not trip in the doorway as she left the lab.  Scott saw claimant walking down the hallway approximately fifteen to twenty minutes later.  At that time, claimant was walking normally and did not limp.

Felicia Wilkins, an employee of Smith Kline and Riverside, testified that on May 23, 1996, she also saw claimant come into the lab at 3:15 p.m. and leave the lab.  Wilkins did not see claimant trip in the doorway as she left.  When Wilkins saw claimant fifteen to twenty minutes later, claimant was walking normally without a limp.

## Medical Evidence

Dr. John Andrew Kona, an orthopedic surgeon, treated claimant for knee problems before the May 23, 1996 incident. Before May 23, 1996, claimant had undergone three surgical reconstructions for a torn anterior cruciate ligament in her

right knee.  As of March 14, 1995, the date of Dr. Kona's last examination of claimant's knees before her May 23, 1996 incident, Dr. Kona concluded that claimant "had a little bit of laxity of the ligament, but it was stable.  She had a good exam for her serviceable knee."  Dr. Kona did not place claimant under any physical restrictions at that time.

Dr. Kona examined claimant next on May 24, 1996, the day after the tripping incident.  Claimant gave Dr. Kona a history of "slipp[ing] on the edge of a carpet that connects with the linoleum in the work space and twist[ing] her right knee."  At that time, Dr. Kona found a small amount of laxity in the anterior cruciate ligament, incomplete extension of the knee, and some tenderness on the lateral side of the knee joint.  A June 3, 1996 MRI did not indicate any new damage to claimant's knee.

On June 21, 1996, claimant underwent arthroscopy, which revealed a partial tear of the anterior cruciate ligament graft, scar tissue that had been generated inside the knee, and degenerative joint disease.  Dr. Kona removed some scar tissue during the procedure.  Dr. Kona opined that the injury inside claimant's knee was consistent with a traumatic event, such as that described by claimant.  While Dr. Kona acknowledged that the stretching of the January 1994 graft and the fibers coming loose in claimant's knee could be consistent with "use over time," he believed that claimant's injury was more consistent with a traumatic event.  On July 8, 1996, Dr. Kona reported that

claimant's knee was much better, and he released her to work without restrictions.

Dr. M.J. Bosse, an orthopedic surgeon, who reviewed claimant's medical records at employer's request, opined on October 19, 1996, that the June 1996 arthroscopy demonstrated that claimant's knee had not been injured by the tripping incident. Dr. Bosse further opined that claimant's current symptoms were related to her pre-May 23, 1996 condition.

Dr. Kerry F. Nevins, an orthopedist who also reviewed claimant's medical records for employer, opined on November 11, 1996 that the May 23, 1996 injury had little, if any, effect on claimant's right knee condition. Dr. Nevins opined that "[a]t best, it would be considered a minor aggravation of a pre-existing condition."

Dr. Sheldon L. Cohn, an orthopedic surgeon, who examined claimant on December 20, 1996 and reviewed the histories contained in the other independent medical exam reports, opined that

> when [claimant] slipped at work, she sustained a pivot shifting incident of her knee, which aggravated her arthritic condition, thereby causing her to undergo arthroscopic debridement of her knee. I believe that she recovered from that exacerbation on or about July 8, 1996. I do not believe any of her present impairment, symptoms or any restrictions are due to the injury at work on May 23, 1996. I do feel that the arthroscopic intervention and treatment for knee between May 23, 1996, and July 8, 1996, were due to the injury she sustained at work.

"A finding by the Commission that an injury [did or did not arise] out of and in the course of employment is a mixed finding of law and fact and is properly reviewable on appeal." Dublin Garment Co., Inc. v. Jones, 2 Va. App. 165, 167, 342 S.E.2d 638, 638 (1986).

"To prove the 'arising out of' element, [claimant] must show that a condition of the workplace either caused or contributed to her fall." Southside Virginia Training Ctr. v. Shell, 20 Va. App. 199, 202, 455 S.E.2d 761, 763 (1995). "[O]ur inquiry must be whether credible evidence supports a finding that a defect in the [doorway threshold] caused [claimant] to . . . [trip and twist her knee]." Id. at 203, 455 S.E.2d at 763.

Here, claimant's undisputed testimony provides credible evidence to support the commission's factual findings that claimant caught her tennis shoe on a metal strip that was "sticking up" from the floor, causing her to trip and injure her knee. Based upon these findings, the commission could reasonably infer that the defect in the metal strip caused claimant's accident, which resulted in her injuries. "Where reasonable inferences may be drawn from the evidence in support of the commission's factual findings, they will not be disturbed by this Court on appeal." Hawks v. Henrico County Sch. Bd., 7 Va. App. 398, 404, 374 S.E.2d 695, 698 (1988). Here, the evidence supported an inference that a condition of the workplace either

caused or contributed to claimant's injuries.

"In determining whether credible evidence exists, the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses." Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991). As fact finder, the commission was entitled to accept claimant's testimony and to reject the testimony of Scott and Wilkins. Moreover, the commission was entitled to give little probative weight to Cantor's testimony. He did not examine the metal strip until August 1996, almost three months after claimant's tripping incident. No evidence showed that the metal strip was in the same condition in August 1996 as it was at the time of claimant's tripping incident. In fact, claimant testified, without contradiction, that when she photographed the metal strip the day after the accident, it appeared to have been hammered down in the area where she tripped.

Because credible evidence supports the commission's finding that a condition of claimant's workplace either caused or contributed to her injury, we will not disturb the commission's decision holding that claimant's injury arose out of her employment.

## II.

"The standard of review on appeal where the admissibility of expert testimony is challenged is whether the trial court abused

its discretion." Kern v. Commonwealth, 2 Va. App. 84, 86, 341 S.E.2d 397, 398 (1986).

The pertinent issue in this case was whether the condition of the doorway threshold on May 23, 1996, at the time of the tripping incident, created an employment-related hazard which caused claimant's injuries. Cantor's excluded testimony about whether the threshold complied with applicable codes when he examined it in August 1996, three months after the accident, was irrelevant to this issue, especially in light of claimant's testimony that the metal strip was not in the same condition the day after her accident as it had been at the time of her injury. See Runyon v. Geldner, 237 Va. 460, 463-64, 377 S.E.2d 456, 458-59 (1989) (trial court should refuse to admit expert testimony absent proof of similarity of conditions existing at time of expert's tests and at time relevant to facts in issue).

In addition, Cantor's excluded testimony that the metal strip posed a risk that was common to the general public and did not pose a risk arising out of claimant's employment expressed opinions as to the "ultimate issues" to be decided by the commission, and, therefore, was inadmissible. See Davis v. Commonwealth, 12 Va. App. 728, 731, 406 S.E.2d 922, 923 (1991). See generally Code § 8.01-401.1 (opinion testimony of experts).

Accordingly, the commission did not abuse its discretion in excluding Cantor's testimony.

III.

"The actual determination of causation is a factual finding that will not be disturbed on appeal if there is credible evidence to support the finding." Ingersoll-Rand Co. v. Musick, 7 Va. App. 684, 688, 376 S.E.2d 814, 817 (1989). "Questions raised by conflicting medical opinions must be decided by the commission." Penley v. Island Creek Coal Co., 8 Va. App. 310, 318, 381 S.E.2d 231, 236 (1989).

In finding that claimant sustained her burden of proving that the tripping incident caused an injury to her right knee, the commission accepted the opinion of the treating physician, Dr. Kona. Dr. Kona conceded that claimant's knee problems could have arisen from degenerative changes. However, he believed that claimant's injuries were more consistent with a traumatic event, such as the May 23, 1996 incident she described. Dr. Cohn agreed with Dr. Kona's opinions. The opinions and medical records of Drs. Kona and Cohn, coupled with the undisputed evidence that claimant had not sought medical treatment for any right knee problems between March 1995 and the date of the accident, provide credible evidence to support the commission's decision. "The fact that there is contrary evidence in the record is of no consequence if there is credible evidence to support the commission's finding." Wagner, 12 Va. App. at 894, 407 S.E.2d at 35.

For the reasons stated, we affirm the commission's decision.

Affirmed.