**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 24-1102**

_____

LOIS ANN BROWN,

Plaintiff – Appellant,

v.

WAL-MART STORES EAST, LP,

Defendant – Appellee.

_____

Appeal from the United States District Court for the Western District of Virginia, at
Lynchburg.  Robert S. Ballou, District Judge.  (6:23-cv-00006-RSB-JCH)

_____

Argued:  December 12, 2024                    Decided:  June 4, 2025

_____

Before HARRIS, RICHARDSON, and QUATTLEBAUM, Circuit Judges.

_____

Vacated and remanded by published opinion.  Judge Richardson wrote the opinion, in
which Judge Harris and Judge Quattlebaum joined.

_____

**ARGUED:**  Allen David Hawkins, I, OVERBEY, HAWKINS, WRIGHT & VANCE,
PLLC, Rustburg, Virginia, for Appellant.  Victor S. Skaff, III, GLENN ROBINSON
CATHEY SKAFF & WHITE PLC, Roanoke, Virginia, for Appellee.  **ON BRIEF:** Chad
A. Mooney, PLDR LAW, PC, Lynchburg, Virginia, for Appellant.

RICHARDSON, Circuit Judge:

Ice and snow can be slippery. Everyone knows that. Lois Brown knows that all too well. That's why, after a snowstorm, Virginia requires businesses to protect their customers by using reasonable care in removing ice and snow from their outdoor premises. But how much care was enough for reasonable care the morning after the snowstorm in Lynchburg, Virginia on January 27, 2021? And did the Wal-Mart on Old Forest Road use reasonable care the morning Lois Brown slipped and fell in its parking lot? These are hard questions. These are fact-intensive, detail-sensitive, circumstance-specific questions. In other words, these are jury questions. So we vacate the district court's grant of summary judgment for Wal-Mart and remand the case for further proceedings.

## I.    BACKGROUND

### A.    Facts

A snowstorm entered the Lynchburg area the night of January 27, 2021. Snowfall began around 11:00 PM and lasted through, at the latest, 6:15 AM the next morning. It was a light storm, with no more than 2.5 inches of snow coming down overnight. As the snow began to fall, temperatures around Lynchburg were slightly above freezing, hovering around 32–34 degrees Fahrenheit. But by the time the snowfall ceased, temperatures had declined below freezing, around 29 degrees.

At 8:30 AM on January 28, the plaintiff Lois Ann Brown pulled her truck into the parking lot of a Wal-Mart in Lynchburg. On her drive over, the roads were clear of snow. Her parking space looked clear too, though the surface of the parking lot looked wet. She parked, opened her door, saw no hazard on the ground, got out of her car—and immediately

slipped. She struggled to get back up to her feet and had to grab onto her truck to stand. To avoid slipping again, Brown got back in her truck and moved into a different parking spot closer to the store.

Upon entering the Wal-Mart after her fall, Brown was met by an employee who saw Brown's wet clothing and knew that Brown had fallen. Although her clothes were wet from the fall, Brown noticed no salt or other deicing chemicals clinging to her clothing. The employee, concerned, went to fetch the store manager.

The store manager on duty that day was Anthony Ware. After Ware came out to meet Brown, he accompanied her out to the spot of her fall to take photos of the spot and file an incident report. Brown claims that when the two of them reached the spot of her fall, Ware exclaimed "shit, this is ice," and commiserated that he "almost bust[ed] [his] ass" that morning in the parking lot too—though Ware denies ever having said this. J.A. 314–15. Ware's photos of Brown's parking space, which are part of the record, don't show very much; nothing appears to differentiate Brown's parking space from any other space in the shot. But Ware confirmed that he did not perceive any salt or other chemicals in the parking lot when he went to check with Brown.

Ware said much the same about the state of the parking lot that morning. He had arrived hours earlier at 5:50 AM to open the store. He couldn't speak to the state of the parking lot near Brown's accident as he had parked closer to the store entrance on the opposite side of the lot. But he confirmed that on his way in, he only saw salt on the sidewalk adjacent to the store, not on the parking lot asphalt. Ware later testified that he

3

wasn't sure who put the sidewalk salt down; Wal-Mart employees sometimes would salt the sidewalks themselves.

The rest of the ice and snow management for the store premises is handled by an independent contractor. The contractor's contractual responsibilities are unequivocal. The contractor must "keep all paved and concrete surfaces," including both the driving aisles and individual parking spaces in the parking lot, "slip free." J.A. 468. This responsibility attaches at the "first sign of ice or snow accumulation regardless of the time of day or day of week," with "no delayed trigger." J.A. 468–49. And to ensure the contractor does not shirk its duties, the contractor is not supposed to leave the Wal-Mart site "until confirmation by the Store Management Team that the work has been completed." J.A. 470.

As required on account of the snowstorm, the contractor arrived on the Wal-Mart premises that morning. Surveillance video—which only covers the main Wal-Mart parking lot to the front of the store—shows the contractor's truck driving around for a couple of minutes just after 7:30 AM. The truck's snowblade is up and stays within the parking lot's aisles, never once straying into the parking spaces. The truck does not stop. No one steps out of the truck. And no salting or chemical application can be discerned. When the truck leaves the video frame after its brief cameo, it is headed down the parking lot aisle away from the store.

4

Ware states that he was never alerted to the contractor's presence. But Tyler Pritt, the Asset Protection Coach at the store, apparently was.[1] Part of Pritt's responsibility was to attend to the parking lot on days with inclement weather. Pritt claimed that on the morning of January 28, 2021, he inspected the parking lot around 7:30 AM and spoke with the contractor, who was properly scraping the parking lot and applying salt and other chemicals "as necessary." J.A. 526. Neither Pritt's inspection of the lot nor his alleged interaction with the contractor nor the contractor's deicing activities is caught on surveillance video.

## B.      Procedural History

Brown sued Wal-Mart in state court. She asserted that Wal-Mart maintained its premises negligently by not treating the ice in the parking lot and sought $300,000 in damages for her fall. Wal-Mart removed the suit from state court to the District Court for the Western District of Virginia. Following discovery, Wal-Mart moved for summary judgment. The district court granted Wal-Mart's summary judgment motion after a hearing. *Brown v. Wal-Mart Stores E., LP*, 2024 WL 150779, at *1 (W.D. Va. Jan. 12, 2024).

The district court held that Brown's negligence suit failed for two reasons. First, it thought Brown failed to satisfy her legal burden under Virginia law to produce evidence that Wal-Mart had "actual or constructive notice of the black ice where she fell." *Id.* at *1.

---

[1] Pritt's declaration did not come out in discovery; it was instead appended to Wal-Mart's summary judgment reply brief before the district court. Brown did not object to this late filing, however, so we treat Pritt's declaration as we do the rest of the record.

5

For Wal-Mart to be liable, the district court held, Brown needed to show that the store was aware of the "*specific* unsafe condition"—i.e., the specific patch of ice in the parking lot—that Brown slipped on, as well as when that specific patch of ice had formed. *Id.* at *3–4. Absent such specific notice, the district court thought that Wal-Mart lacked a duty to remove the ice in the first place. *Id.*

Second, the district court held that even if Wal-Mart possessed such a duty, Brown produced no evidence that Wal-Mart's actions that morning breached it. The district court thought that nothing in the record rebutted Pritt's declaration that the contractor had come, scraped the lot, and applied salt and chemicals as necessary. *Id.* at *2, *4. It regarded Ware's testimony as only establishing the fact that a single employee "with admittedly no knowledge of the contractor," failed to notice the work the contractors did. *Id.* at *5. And the district court did not believe that the lack of salt or chemicals on Brown's clothing after her fall implied anything at all about whether the contractor had applied them to the lot. *Id.* Instead, the district court thought that Brown's evidence was at best an "improper[] attempt[] to shift to Walmart the burden to show the steps it undertook to clear the parking lot." *Id.* Without more, the district court granted summary judgment for Wal-Mart. *Id.* at 6.

Brown timely appealed.

6

## II.    DISCUSSION

This is a slip-and-fall premises liability case in Virginia that is in federal court on diversity jurisdiction.[2]    Accordingly, we apply Virginia state law.  *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938).  Specifically, we apply Virginia negligence law.  *See, e.g.*, *Colonial Stores Inc. v. Pulley*, 125 S.E.2d 188, 189–90 (Va. 1962) (defining a slip-and-fall premises liability action as a negligence action).  Negligence in Virginia requires four elements:  (1) the defendant must have a duty of care that (2) it breached, and for the breach to have (3) proximately caused an (4) injury to the plaintiff.  *See, e.g.*, *id.*; *Atrium Unit Owners Ass'n v. King*, 585 S.E.2d 545, 548 (Va. 2003).

As is the norm for slip-and-fall cases, the latter two elements are not at issue.  All agree that Brown slipped in the Wal-Mart parking lot and sustained injuries from the fall.  *See Brown*, 2024 WL 150779, at *2.  On appeal, the parties dispute only (1) whether Wal-Mart had sufficient notice of the ice in its parking lot to create a duty to Brown, and (2) whether Wal-Mart breached that duty.  We review the district court's decision to grant summary judgment for Wal-Mart on both grounds *de novo*.  *See Stanton v. Elliott*, 25 F.4th 227, 234 (4th Cir. 2022).  And because the defendant Wal-Mart moved for summary

---

[2] Plaintiff Lois Brown is a citizen of Virginia.  Defendant Wal-Mart Stores East, LP, is a Delaware limited partnership that—after tracing through two LLCs to an Arkansas corporation with its principal place of business in Arkansas—is a citizen of Arkansas.  *See Capps v. Newmark Southern Region, LLC*, 53 F.4th 299, 302 (4th Cir. 2022); *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195–96 (1990).  The damages requested by Brown for her injuries are $300,000.  These facts satisfy the citizenship and amount-in-controversy requirements for diversity jurisdiction, 28 U.S.C. § 1332, so Wal-Mart properly removed the case to the district court under § 1441.  We have appellate jurisdiction over the district court's decision under § 1291.

judgment, "[w]e view the evidence in the light most favorable to the plaintiff; we draw all reasonable inferences in [her] favor; and we do not weigh the evidence or make credibility calls, even if we do not believe [s]he will win at trial." *Id.*

### A.      Wal-Mart Did Not Need to Know About any Ice Patch to Have a Duty

A business has a "duty to exercise ordinary care" toward its customers, who are "invitee[s] upon its premises."[3]  *Colonial Stores*, 125 S.E.2d at 190; *see also City of Richmond v. Grizzard*, 136 S.E.2d 827, 830 (Va. 1964).  The duty of ordinary care requires the business to "have the premises in a reasonably safe condition for [an invitee's] visit" by "remov[ing], within a reasonable time, foreign objects from its floors." *Colonial Stores*, 125 S.E.2d. at 190.  The foreign objects that must be removed include not only manmade hazards like banana peels and empty soda bottles, but also natural hazards like ice and snow.  *See Walker v. Mem'l Hosp.*, 45 S.E.2d 898, 901–02 (Va. 1948).  And the duty extends beyond the interior of the store to outdoor areas, including parking lots.  *See Wynne v. Spainhour*, 205 S.E.2d 634, 635 (Va. 1974).

Yet a business should not be expected to remove hazards that it has no way of knowing about.  So the duty to remove hazards only exists for those hazards the business "knew" or "should have known" about.  *Colonial Stores*, 125 S.E.2d at 190.  Whether a

---

[3] "[T]he duties owed to visitors traditionally depend upon the visitors' status." *Tate v. Rice*, 315 S.E.2d 385, 389 (Va. 1984).  In increasing order of duties owed, there are three main categories:  trespassers, licensees, and invitees.  *Id.*  A trespasser unlawfully enters the land of another; a licensee enters for his own convenience with consent of the owner, such as for a social purpose; and an invitee enters pursuant to the owner's express or implied invitation for non-social reasons.  *See Pearson v. Can. Contracting Co., Inc.*, 349 S.E.2d 106, 110 (Va. 1986).

business actually knew—had actual notice—of a hazard is a straightforward question to ask. Whether a business *should have* known about a hazard—had constructive notice—is a more complex question. To show that a business owner had constructive notice, the plaintiff must proffer "evidence that the defect was noticeable" *and* evidence that the defect "had existed for a sufficient length of time." *Grim v. Rahe, Inc.*, 434 S.E.2d 888, 890 (Va. 1993). The latter temporal requirement means that "if the evidence fails to show *when* a defect occurred on the premises," the plaintiff cannot establish constructive notice. *Id.*

Wal-Mart contends that Brown cannot establish either actual or constructive notice of the specific patch of ice that she slipped on. On Wal-Mart's account, Brown alleges no evidence of the store's subjective knowledge, and she provides no details about the precise time of the ice patch's formation. Without notice, Brown cannot show that Wal-Mart had a duty to remove her specific patch of ice, and her suit fails—or so the argument goes. But Wal-Mart is mistaken. Brown need not show notice of her specific patch of ice for Wal-Mart to have a duty. Instead, the snowstorm itself provided Wal-Mart with notice of the ice and snow in the entire parking lot all at once.

Virginia law is clear: "The duty to remove ice and snow from outdoor areas . . . is keyed to the end of the storm and a reasonable time thereafter." *Mary Wash. Hosp., Inc. v. Gibson*, 319 S.E.2d 741, 744 (Va. 1984). That is, once "a reasonable time [has] passed after the end of the storm . . . it [becomes] the duty of the [business] to use reasonable care to remove natural accumulations of snow and ice from [outdoor areas] used by its invitees." *Id.* at 744–45. The Supreme Court of Virginia has consistently applied this standard in all

9

its inclement weather cases involving commercial establishments.[4]  *See, e.g.*, *Wynne*, 205 S.E.2d at 635 (store parking lot); *Walker*, 45 S.E.2d at 902 (hospital outdoor walkways); *Langhorne Rd. Apts., Inc. v. Bisson*, 150 S.E.2d 540, 542–43 (Va. 1966) (apartment outdoor common areas).

By its plain terms, the duty to use reasonable care to remove ice and snow after a storm doesn't apply to specific patches of ground.  Rather, it applies to all of a business's "outdoor areas" all at once.  *Mary Wash. Hosp.*, 319 S.E.2d at 744.  And of course it does.  That's how weather works.  "Every pedestrian who ventures out [during inclement weather] knows he is risking the chance of a fall and of a possible serious injury."  *Walker*, 45 S.E.2d at 907.  Every business knows that too.  The weather conditions that would put a business on notice that *this* patch of its parking lot is potentially slippery would also put it on notice that *that* patch of its parking lot is potentially slippery.  When it snows on the premises, *everywhere* is potentially slippery.  Snowstorms don't coat half a parking lot.

This kind of generalized notice is unique to inclement-weather premises-liability cases.  For one-off hazards in other premises-liability cases, the business needs actual or constructive notice of the precise hazardous object or substance that injured the customer.  *See, e.g.*, *Colonial Stores*, 125 S.E.2d at 190 (requiring plaintiff to show that the defendant had notice of a particular empty soda bottle); *Grim*, 434 S.E.2d 889–90 (requiring plaintiff

---

[4] Private residences are not subject to this duty.  *Tate*, 315 S.E.2d at 390 ("We . . . decline to extend to a householder the duty imposed upon commercial establishments, carriers, municipalities, and landlords to remove natural accumulations of snow and ice within a reasonable time after the end of a storm.").

to show that the defendant had notice of a particular broken light fixture). The reason for the difference is simple: It's only possible to have notice of the hazardous conditions of an entire area if the hazard in question covers the entire area. A snowstorm covers swathes of ground; a banana peel does not.

Thus, in inclement-weather premises-liability cases—but not in one-off hazard premises-liability cases—the plaintiff need not produce any evidence that the business had notice of the specific hazard the plaintiff slipped on. The only evidence needed to show that the business was on notice is evidence of the storm's existence in the relevant area.[5] So to determine whether a business had a duty to remove ice and snow generally after a storm, "the complete inquiry is whether the storm had ended, and if so, whether a reasonable time period had passed."[6] *Amos v. NationsBank, N.A.*, 504 S.E.2d 365, 368 (Va. 1998).

---

[5] The ice-and-snow premises-liability cases in Virginia do not discuss notice at all. This might suggest that such cases are governed by a wholly different legal standard. But the Virginia Supreme Court has told us that ice-and-snow cases use the same standard as other premises liability cases. *See Langhorne Rd. Apts.*, 150 S.E.2d at 542 ("We believe the more realistic approach to the problem is to place the dangerous condition [of ice and snow] with which we are here concerned *upon the same basis as the other defects for which a landlord may be held liable* if they cause injury to those lawfully upon the premises." (emphasis added)). So the harmonious reading of the caselaw is that notice *is* required, just as with any other premises liability suit, but that the storm itself provides notice. The ice-and-snow cases just don't bother stating the obvious.

[6] As confirmation, we note that this understanding is reflected in Virginia's own model jury instructions. The model jury instructions contain two different premises liability instructions, depending on if it's a one-off hazard or if it's ice and snow. The instruction for the former is titled "Occupant's Duty to Invitee: Remove Foreign Objects" and requires actual or constructive notice by the occupant of the specific hazard in question. Va. Civil. Jury Instr. No. 23.050. The instruction for the latter is titled "Commercial (Continued)

11

This snowstorm in the Lynchburg area ended at 6:15 AM at the latest, while Brown's accident occurred shortly past 8:30 AM. So the storm had ended by the time Brown arrived onsite. That leaves the question of whether "a reasonable time" had passed afterward. The answer here is yes. The logic behind keying the duty to a period after the storm ceases is that "[i]t would be an unreasonable rule which would impose upon an inviter the necessity of repeated excursions into the storm." *Walker*, 45 S.E.2d at 907. Once the storm ceases, the danger of repeated excursions evaporates. A reasonable time, then, encompass only as long as it takes for a person to notice the storm has ceased and to equip themselves with whatever is needed to clear the storm safely and warmly.

That duration passed here. This snowstorm in the Lynchburg area ended at 6:15 AM at the latest, while Brown's accident occurred around 8:30 AM. That leaves over two hours for Wal-Mart to have addressed the conditions in its parking lot. Ware, the store manager, was available on the premises before 6:00 AM to monitor the weather conditions. And the surveillance video shows that the contractor hired by Wal-Mart to clear the parking lot arrived on site by 7:30 AM, if not earlier. Nothing in the record suggests that Wal-Mart's employees would incur an unreasonable risk to venture out and keep the parking lot

Occupant's Duty to Remove Snow and Ice After Storm" and requires no such thing. Va. Civil. Jury Instr. No. 23.110. It instead tracks the language of the caselaw and imposes the duty "a reasonable time after the [freezing rain; snow] stops falling." *Id.*

Why is there a separate jury instruction for inclement weather at all if it's governed under the same standard? Because the duty for a business to remove ice and snow is in one respect a *lesser* duty than its duty to remove one-off hazards. A business must generally remove hazards within a reasonable time from when they come into existence. But for ice and snow, the clock on a "reasonable time" does not start to run until "after the storm ceases," even though hazardous ice and snow are present on the ground during the storm. *Langhorne Rd. Apts.*, 150 S.E.2d at 542.

12

reasonably safe for customers by 8:30 AM. So by the time 8:30 AM came around, Wal-Mart had a duty "to use reasonable care to remove natural accumulations of snow and ice" from its parking lot to keep it in "reasonably safe condition."[7] *Langhorne Rd. Apts*, 150 S.E.2d at 542.

The district court erred in concluding otherwise. It required Brown to proffer evidence that Wal-Mart knew or should have known of the specific patch of ice she slipped on. But the cases that the district court relied on are primarily one-off hazard cases.[8] *See Brown*, 2024 WL 150779, at *3–4. For example, *Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 448 (4th Cir. 2004), is a case where the plaintiff was "injured by mirrors that fell from an upper shelf of a mirror display." The plaintiff in *Winn-Dixie Stores, Inc. v. Parker*, 396 S.E.2d 649, 650 (Va. 1990), slipped and fell on "a piece of snap bean." And *Thomas v. Omni Hotels Mgmt. Corp*, 742 F. App'x 729, 730–31 (4th Cir. 2018), involved a patch of ice, but the patch of ice wasn't from a storm, but from a malfunctioning decorative fountain. Mirror displays, snap beans, and faulty fountains do not provide notice the way a storm does. So these cases do not set out the correct understanding of notice in inclement weather

---

[7] Though Wal-Mart hired an independent contract to maintain its outdoor areas, the duty (and thereby liability for breaching that duty) is still Wal-Mart's. "[I]f a duty to maintain a premises in a safe condition is imposed by contract or by law, it cannot be delegated to an independent contractor." *Love v. Schmidt*, 389 S.E.2d 707, 709 (Va. 1990).

[8] The district court also relied on *Adkison v. Frizzell*, 2012 WL 4127617 (W.D. Va. August 14, 2012). And Wal-Mart on appeal cites *Meadows v. Wal-Mart Stores East, LP*, 2012 WL 4513808 (W.D. Va. October 1, 2012). Unlike the other cases, *Adkison* and *Meadows* are both inclement weather slip-and-fall cases that are on all fours with this one, and both cases reject the explanation that a storm provides general notice of ice and snow. We are, of course, bound by neither of these federal district court cases.

cases. Brown's evidence of the snowstorm was enough to show that Wal-Mart had notice of ice and snow. The district court accordingly should not have granted summary judgment to Wal-Mart on this basis.

**B.      There Is a Genuine Dispute of Material Fact Over Wal-Mart's Breach**

The district court had a second, independent basis for granting summary judgment for Wal-Mart. After assuming for the sake of argument that Wal-Mart had a duty, the district court concluded that Brown failed "to provide affirmative evidence or show specific facts that Walmart's actions (or its failure to act) was not reasonable." *Brown*, 2024 WL 150779, at *5. It thus held that a reasonable jury could not find that Wal-Mart breached its duty to exercise reasonable care if such a duty existed. *Id.* at *6. We disagree with the district court on this second basis too.

This question of whether Wal-Mart breached its duty of reasonable care can be broken down into two questions: First, what was Wal-Mart required to do under the circumstances? Second, what did Wal-Mart actually do? Wal-Mart breached if it did less than its duty required. Determining breach thus requires comparing the answers to *both* questions. But given the uncertain and contradictory state of the record, it doesn't appear the district court could have answered *either* of these questions as a matter of law.

For starters, the district court couldn't definitively conclude what reasonable care required of Wal-Mart that morning. "[T]he standard . . . of reasonable care[] usually requires a jury determination." *Small v. WellDyne, Inc.*, 927 F.3d 169, 173 (4th Cir. 2019) (quotation omitted). The Virginia Supreme Court has recognized much the same in its premises liability cases. *See, e.g.*, *Knight v. Moore*, 18 S.E.2d 266, 270 (Va. 1942)

14

("[Q]uestions as to whether the owner of the premises has exercised the required care toward his invitee . . . are matters for the jury."). That's because "[t]he amount or degree of diligence and caution which is necessary to constitute reasonable or ordinary care depends upon the circumstances and the particular surroundings of each specific case." *Perlin v. Chappell*, 96 S.E.2d 805, 808 (Va. 1957). So such fact-intensive inquiries should not be resolved on summary judgment as a matter of law "[u]nless the evidence is without conflict, or unless fair-minded men cannot differ on the inferences to be drawn from it." *Knight*, 18 S.E.2d at 270.[9]

Yet the evidence here is with conflict, and the inferences to be drawn unclear. The key piece of evidence in the record, a 2-hour-long video of the parking lot from a Wal-Mart surveillance camera, is poor quality, limited in scope, and difficult to interpret. The video shows that there was snow present on the parking lot asphalt and wetness where Brown slipped. But the amount of snow in the spots where it had not already melted might accurately be described a "dusting" or a "smattering"—not a "sheet" and certainly not a "blanket." The video shows the independent contractor hired by Wal-Mart driving into the lot around 7:30 AM then immediately driving out of the lot, taking no actions in frame.

---

[9] Whether there is enough evidence in dispute to "take the case to the jury is to be determined by federal standards in a diversity action." *Brant v. Robinson Inv. Co.*, 435 F.2d 1345, 1347 (4th Cir. 1971). But Virginia's summary judgment standard is nearly identical to the federal one. *Compare* Va. R. Civ. P. 3:20 ("Summary judgment shall not be entered if any material fact is genuinely in dispute."), *with* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact."). We find Virginia's application of this standard to premises liability cases persuasive.

15

But the surveillance video does not cover any time prior to 7:30 AM, nor does it show the other sides of the store building. The video shows that Brown slipped and fell just after getting out of her truck. But other patrons of the store are walking around other areas of the parking lot without any apparent difficulty.

It's hard to determine what the state of the parking lot is at all, so it's correspondingly hard to determine what Wal-Mart was expected to do in taking reasonable care. Wal-Mart was not required to guarantee the safety of its customers by removing every single flake of snow and ice. Far from being required to be "an insurer of the plaintiff's safety," Wal-Mart only needed to "maintain [its] premises in a reasonably safe condition" for its customers. *Wynne*, 205 S.E.2d at 635. Reasonably safe is not absolutely safe; the use of reasonable care may still leave patches of ice and snow. *See id.* Under the circumstances, then, was Wal-Mart required to scrape the parking spots given the possibility of ice? Did it need to apply salt and other deicing chemicals to the asphalt? Or could it have reasonably determined after inspection that nothing at all was required? We're not sure.

And separate from the question of what Wal-Mart *needed to* do, there's uncertainty in the record as to what Wal-Mart *did* do. In a late declaration, Pritt, responsible for attending to the parking lot on inclement weather days, stated that he inspected the lot himself that morning around 7:30 AM, confirmed that the independent contractor was "on site applying chemicals and/or scraping the parking lot as necessary," and instructed the

16

contractors to "salt certain parking areas on the side of the store."[10]  J.A. 526.  Pritt's declaration paints a picture of a diligent store engaged in extensive joint efforts with its independent contractor to clear its parking lot of ice and snow.

But nothing described in Pritt's declaration is captured on the video.  *Cf. Stanton*, 25 F.4th at 235 ("[W]e cannot simply accept the . . . statements as true given potentially contradictory physical evidence.").  And on the other side, Brown has put forth her own evidence suggesting that the contractors did not, in fact, apply salt or deicing chemicals to the parking lot.  She alleges that she did not have any such substances on her clothing after falling on the ground.  Ware, too, stated in his deposition that when he accompanied Brown out to the site of her accident, he "didn't see" any "salt and stuff put in that area, like in the parking spots."  J.A. 492–93.  And Ware added that despite being the store manager on duty that day, he was never informed of the contractor's presence that morning or of the work that they did.  Brown and Ware's statements make Wal-Mart's efforts that morning sound far less meticulous than Pritt does.

The natural inferences about what Wal-Mart was doing that morning, drawn from the evidence proffered by each side, are in conflict.  How much one thinks Wal-Mart was doing that morning to clear its parking lot comes down to whose story is believed.  With the video in tow, is Pritt's account of what Wal-Mart did that morning—scraping, salting, deicing—the true account?  Or is Brown's?  Answering this kind of question is the bread

---

[10] We note that Pritt's declaration suggests that Wal-Mart itself believed that, given the condition of the parking lot that morning, it had a duty to scrape the lot and apply salt and other deicing chemicals.

17

and butter of the jury. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions.").

The record presents a range of reasonable determinations both for what Wal-Mart had to do and for what Wal-Mart actually did. Some comparisons of those determinations mean that Wal-Mart breached its duty of reasonable care. Others do not. The district court therefore erred in concluding that "no reasonable jur[y] could find that Walmart was negligent based on this evidence." *Brown*, 2024 WL 150779, at *5.

\*          \*          \*

Brown slipped and fell on ice in a Wal-Mart parking lot after a snowstorm. She sued Wal-Mart for negligence, claiming that the company breached its duty under Virginia law to use reasonable care in keeping its premises clear of ice and snow. We agree that Wal-Mart owed such a duty to Brown after the storm, even if it lacked notice of the precise patch of ice she slipped on. Whether Wal-Mart's actions breached that duty, however, we do not determine. The record before us is scant, the video grainy, and the testimony conflicting. A reasonable jury could find for either party if given the chance. So it must be given the chance.[11] Accordingly, the district court's grant of summary judgment is

*VACATED AND REMANDED.*

---

[11] Or, if not a jury trial, then at least further proceedings. Below, Wal-Mart raised a contributory negligence defense. The district court never ruled on the defense because it decided Wal-Mart was not negligent the first place, and the defense is not before us. On remand, Wal-Mart is entitled to raise its contributory negligence defense again for the district court's consideration.